STATE OF NEBRASKA, APPELLEE, V. LEE A. BEANS,
APPELLANT.
321 N.W.2d 72
Filed June 25, 1982. No. 81-622.

John T. Tarrell, and David B. Downing, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

This is a post conviction case. The defendant's motion to vacate a conviction and sentence of life imprisonment for first degree murder was denied after hearing.

. The 41-year-old defendant shot and killed his wife on April 29, 1976, in their home in Kearney, Nebraska. The defendant and his wife had been married for 18 years, but were in the process of a divorce action at the time. There had been several altercations between the defendant and his wife prior to the shooting and the defendant had been cited twice and jailed once for civil contempt in the divorce proceeding.

The defendant and his wife had each purchased a gun prior to the incident of April 29, 1976. On the evening of April 29, 1976, the defendant and his wife, two of their four children, a nephew of the wife, and a friend of hers were present in the family home where the wife was living. The defendant had placed a loaded gun in his waistband before entering the house. His wife had her gun in her purse. The two became involved in a heated argument. The defendant's wife reached into her purse for her gun and the defendant pulled his gun and shot into the wall to demonstrate that it was loaded. A short time later defendant's wife again reached into her purse and was holding her gun in her hand. The defendant tried to knock her gun aside and then shot his wife with his own gun, wounding her fatally.

The defendant was arrested that evening and appeared without an attorney in the county court of Buffalo County the next day and entered a plea of not guilty. The court appointed Gary L. Giese of the Buffalo County public defender's office to represent the defendant. Giese met with the defendant for approximately an hour and a half shortly after learning of the appointment. Giese explained to the defendant the charge, his rights, and possible defenses, including insanity, capacity, intoxication, and self-defense. Giese testified at the post conviction hearing that the defendant was lucid and communicative, and that the defendant asserted that he did not wish to do anything other than plead guilty to first

degree murder. The defendant maintained that position thereafter throughout the entire original criminal proceeding.

On May 4, 1976, Giese arranged for a Kearney psychiatrist to talk with the defendant, and discussed an examination at the Lincoln Regional Center. On May 5, 1976, hearing was held in the District Court to consider defendant's motion for a hearing to determine competency, which had been filed by Giese. On May 6, 1976, the District Court granted the motion for a hearing to determine competency and ordered that a psychiatric evaluation be made of the defendant at the Lincoln Regional Center for a period not to exceed 60 days. The defendant was admitted to the Regional Center on May 7, 1976, and on July 12, 1976, counsel stipulated to the defendant's continued treatment for up to 90 days at the Regional Center.

During the early part of May 1976 Giese reviewed the police reports and statements of the investigating officers and the witnesses at the scene of the murder, and also discussed and reviewed the matter with the defendant. He did not personally interview the eyewitnesses at that time because the reports and the defendant's account corresponded exactly. He testified that if, in fact, the case was to be tried, as he believed it should be, he would have interviewed or deposed all the witnesses prior to trial.

On August 18, 1976, the defendant was arraigned. Giese had met with the defendant on the previous day, but the defendant was represented at the arraignment by a different representative of the public defender's office because Giese was out of town. At the arraignment the defendant pleaded guilty to the charge of first degree murder. The court reviewed the defendant's constitutional rights with the defendant personally, inquired as to whether the defendant still desired to plead guilty, and the defendant again stated that he did. The court refused to accept the

guilty plea until the court could determine the defendant's mental competency to make the plea and committed the defendant to the Department of Corrections for further evaluation for the purpose of determining his competency to enter the plea of guilty as charged.

On October 6, 1976, the court held a hearing on its own motion to determine the defendant's competency. Giese introduced into evidence a letter report dated September 28, 1976, addressed to the District Court, from Dr. Woytassek, a psychiatrist at the Lincoln Regional Center, stating that the defendant was not at that time mentally capable of standing trial or aiding in his own defense, but expressing the belief that he would improve and become capable of standing trial within 3 to 6 months. At the hearing Giese advised the court that the defendant was dissatisfied with the opinion that the defendant was incompetent and had requested that an evaluation by a second psychiatrist be obtained. The court refused to appoint a second psychiatrist.

The defendant testified that Giese deserted him at the Regional Center and up until December 1976. Giese testified that he met with the defendant at the Regional Center three or four times, trying to convince him to change his mind about pleading guilty to first degree murder, and that he emphasized the importance of a defense, possibly self-defense. He also testified that he met with the defendant before each hearing that took place and that he also attempted to persuade the defendant to plead not guilty rather than guilty.

Giese testified that he discussed the possibility of a plea bargain and pleading guilty to a lesser-included offense, both with the defendant and with the prosecutor, but neither was interested. The defendant rejected the suggestion and continued to insist on pleading guilty to first degree murder. The prosecutor testified that he would not have changed

the first degree murder charge.

A further competency hearing was held on December 23, 1976. The prosecution introduced another letter from Dr. Woytassek to the court dated December 8, 1976, stating that the Lincoln Regional Center team, which consisted of two psychiatrists and two psychologists, found that defendant was then capable of standing trial and cooperating with his attorney. Giese objected to a declaration of the defendant's competence on the basis that the defendant was not willing to participate or cooperate in his own defense. The court determined that the defendant was then competent and fixed the arraignment for December 27, 1976.

At the arraignment hearing the District Court reviewed all his constitutional rights with the defendant personally. In answer to questioning by the court the defendant also acknowledged that he had discussed with Giese the nature of the charge, the possible penalties, possible defenses, and evidence. The defendant then pleaded guilty to first degree murder. Giese informed the court that defendant's plea of guilty was made against the advice of his counsel. The arraignment hearing was continued until January 4, 1977, as to the factual basis for the charge.

At the hearing on January 4, 1977, the prosecution introduced evidence substantially reflecting the evidence of the murder detailed previously. Giese informed the court that the defendant had consistently refused to cooperate with his attorney, and had no desire to defend himself in the matter. The District Court then found that the defendant's plea of guilty was voluntarily, knowingly, and intelligently made, and that there was a factual basis to support the charge. The court thereupon accepted the plea of guilty and on January 20, 1977, sentenced the defendant to life imprisonment.

Immediately following sentencing Giese discussed

with the defendant the possibility of filing a motion for a new trial and the appeal process and the times involved. The defendant specifically refused to allow Giese to file a motion for new trial or appeal, and signed a waiver absolving the public defender's office from any responsibility in prosecuting the appeal. The waiver was filed with the court.

On direct appeal by other counsel this court held that the defendant was precluded from raising the issues alleged as error because of a failure to file a motion for new trial, and affirmed the conviction and sentence. *State v. Beans,* 199 Neb. 807, 261 N.W.2d 749 (1978).

On December 16, 1980, the defendant filed his motion to vacate conviction and sentence under the Nebraska Post Conviction Act. On May 27, 1981, following an evidentiary hearing, the District Court again found that the guilty plea of the defendant was made voluntarily, knowingly, and intelligently, and that there was a factual basis to support the plea. The court also found that the evidence was sufficient to establish the mental competency of the defendant to plead or to stand trial. The court specifically found that Giese advised the defendant to plead not guilty and objected to the entry of defendant's guilty plea and that defendant refused to cooperate with his counsel. The court also found that Giese discussed with the defendant possible defenses, including the question of premeditation, the element of intent to kill or to do bodily harm, and the possible defense of self-defense, and that the investigation made by counsel was adequate under the circumstances of the case. The court determined that the defendant had failed to establish his allegations and, therefore, denied defendant's motion to vacate the conviction and sentence. This appeal followed.

The defendant contends that the court erred in finding that he was mentally competent to enter the plea of guilty and in finding that his guilty plea was

a knowing, voluntary, and intelligent choice among the alternative courses of action available. Defendant also contends that he was denied the effective assistance of counsel. That claim rests primarily upon the allegation that defense counsel failed to make sufficient investigation of the facts of the homicide or to interview witnesses personally, failed to challenge written reports, failed to secure a second evaluation of the mental competence of the defendant, and permitted the defendant to plead guilty without an attempt at a plea bargain.

The question of whether or not a defendant is competent to stand trial or to enter a plea is one of fact to be determined by the trial court, and the means employed in resolving the question are discretionary with the trial court. *Marteney v. State,* 210 Neb. 172, 313 N.W.2d 449 (1981).

The standard for determining the validity of a guilty plea is whether or not it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *State v. Shepard,* 208 Neb. 188, 302 N.W.2d 703 (1981).

In the present case the same psychiatrists and psychologists who had earlier found the defendant to be incompetent to stand trial found that the defendant was competent prior to the hearing in December 1976. There was not then or now any testimony in the record by any qualified witness that the defendant was not competent to plead or stand trial in December 1976 or January 1977. The only evidence offered by the defendant at the post conviction hearing was the testimony of a psychologist who had examined some of the Regional Center's records as to the defendant. He testified that, in his opinion, the procedures used to determine the defendant's mental competence, as reflected in those reports, were inadequate. The psychologist had not examined the defendant and admitted that the records he had examined did not include all records in the Regional Center.

The determination of the finder of fact on the issue of competency will not be disturbed unless there is insufficient evidence to support the findings. The test of mental capacity to plead or stand trial is the same. *State v. Quarrels,* 211 Neb. 204, 318 N.W.2d 76 (1982). In the present case there is ample evidence in the record to support the trial court's finding that the defendant was mentally competent to plead and that his plea was voluntary.

The defendant's basic complaint as to the ineffectiveness of counsel is based on the ground that he did not conduct a prompt investigation of the circumstances of the crime and did not personally interview the witnesses before the guilty plea was entered. The defendant relies upon ABA Standards for Criminal Justice with respect to the duty to investigate.

The evidence shows, however, that the investigation defense counsel had made had already persuaded him that the defendant should not plead guilty to a first degree murder charge. The record establishes without any doubt that the defendant himself consistently insisted that he wanted to plead guilty to first degree murder and he would not consider other alternatives. Defense counsel attempted to persuade the defendant to plead not guilty and go to trial, or to consider a plea bargain and plead guilty to a lesser-included offense. As the trial court found in this post conviction hearing, defense counsel advised the defendant to enter his plea of not guilty to the first degree murder charge and objected to the entry of the guilty plea by the defendant when it was made. Under the circumstances reflected by this record, a complete and thorough investigation by the defendant's counsel prior to the entry of the defendant's guilty plea would not have changed the result of the arraignment, nor would it have altered the advice or the course of action which counsel took. As the trial court found: "The Defend-

ant cannot now complain that the Court-appointed attorney permitted him to enter a plea of guilty when the evidence shows that the Defendant's attorney did in fact oppose the entry of the guilty plea and did encourage the Defendant to enter his plea of not guilty."

The present test of the effective assistance of counsel is that counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area, and that he conscientiously protect the interests of his client. Prejudice is an essential element of a claim of ineffective assistance of counsel and a defendant must show that he was prejudiced in the defense of the case by the actions or inactions of his counsel. *State v. Lang,* 202 Neb. 9, 272 N.W.2d 775 (1978).

A person seeking post conviction relief has the burden of establishing a basis for such relief, and the findings of the District Court in denying relief will not be disturbed on appeal unless they are clearly erroneous. *State v. Rust,* 208 Neb. 320, 303 N.W.2d 490 (1981).

In the present case the evidence fails to establish a basis for relief and fails to establish that defendant was prejudiced in the defense of his case by the action or inaction of his counsel. The evidence reflects that the defendant had the effective assistance of counsel who consistently attempted to protect the interests of his client. Any prejudice to the defendant in the defense of his case came from his own actions in refusing to follow the advice of his counsel. The findings of the District Court are not clearly erroneous.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.