STATE OF NEBRASKA, APPELLEE, V. ROBERT E.
WILLIAMS, APPELLANT.

352 N.W.2d 538

Filed June 8, 1984.  No. 82-448.

Dennis R. Keefe, Lancaster County Public Defender, Richard L. Goos, Lancaster County Special Deputy Public Defender, and Michael D. Gooch, and Patrick W. Healey and Douglas L. Kluender, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

PER CURIAM.

Robert E. Williams appeals the order of the district court for Lancaster County, Nebraska, denying relief under the post conviction act, Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979).  A jury found Williams guilty of the first degree murders of Catherine M. Brooks and of Patricia A. McGarry and one count of first degree sexual assault.  The crimes occurred on August 10, 1977.  Williams was sentenced to death for each of the murders and to an indeterminate sentence for sexual assault.  See *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979).  We have reviewed the record, conclude the trial court was correct in denying post conviction relief, and affirm the judgment of the district court.

"A motion for post conviction relief can not be used as a substitute for an appeal or to secure a further review of issues already litigated." *State v. Ohler*, 215 Neb. 401, 405, 338 N.W.2d 776, 778 (1983). Additionally, a defendant in a post conviction proceeding may not raise questions which could have been raised on direct appeal unless the questions are such that they would make the judgment of conviction void or voidable under the state or federal Constitution. See *State v. Stranghoener*, 212 Neb. 203, 322 N.W.2d 407 (1982). One seeking post conviction relief has the burden of establishing the basis for such relief, and the findings of the district court will not be disturbed on appeal unless they are clearly erroneous. See, *State v. Paulson*, 211 Neb. 711, 320 N.W.2d 115 (1982); *State v. Stranghoener, supra.* The reasons for such rules are obvious. As we noted in *State v. Weiland*, 190 Neb. 111, 113, 206 N.W.2d 336, 338 (1973): "There must be an end to litigation. A defendant will not be permitted to rephrase issues previously raised or raise new issues which could have been previously raised for the purpose of securing another review on appeal."

*State v. Hochstein*, 216 Neb. 515, 517, 344 N.W.2d 469, 472 (1984).

Although Williams has assigned 33 errors allegedly committed by the trial court, Williams' claims of error fall into three general categories—the sentencing process, selection and instruction of the jury, and assistance of counsel. These errors assigned could have been raised on direct appeal. Therefore, in order to grant post conviction relief to Williams, the court must find that on account of the errors alleged the judgment of conviction would be "void or voidable under the state or federal Constitution." *State v. Hochstein, supra* at 517, 344 N.W.2d at 472.

Williams claims the statutory sentencing procedure was not followed in his case, because the sentencing

court considered nonstatutory aggravating circumstances, namely, Williams' violent activities in Iowa and Minnesota after the murders and sexual assault in Nebraska. The records and files in this case clearly show that the sentencing court did not consider any nonstatutory aggravating circumstances, when the sentencing court expressly stated:

> [T]he Court has not considered the evidence of the crimes alleged to have been committed by the defendant subsequent to the crimes charged in the Information, in any of the statutory aggravating circumstances herein, except as the same may relate to the intent, sanity, motive, or absence of mistake or accident in the particular acts charged.

Williams' claim concerning nonstatutory aggravating circumstances has no basis in the record.

Williams contends that the use of a presentence report in the sentencing process violated his constitutional rights, for example, due process, confrontation, self-incrimination, and assistance of counsel.

Neb. Rev. Stat. § 29-2521 (Reissue 1979) authorizes a trial court to receive and consider any evidence which is deemed relevant to sentencing in a capital case. Neb. Rev. Stat. § 29-2261 (Reissue 1979) authorizes a presentence investigation in felony cases for the purpose of sentencing and is not restricted to noncapital cases. Williams' argument concerning use of a presentence report is similar to the argument made in *State v. Reeves*, 216 Neb. 206, 221, 344 N.W.2d 433, 444 (1984), and is disposed of by the opinion in *Reeves*:

> Defendant asserts that Neb. Rev. Stat. §§ 29-2519 et seq. (Reissue 1979) set out the exclusive sentencing procedure in homicide cases and that because these statutes do not specifically mandate the use of a presentence investigation, the sentencing panel was in error in doing so. If defendant's interpretation was correct, a trial court could make use of a presen-

tence investigation for a conviction of a Class IV felony such as pandering, but may not consider a presentence investigation after a first degree murder conviction. It is readily apparent that this assignment is without merit. As stated in *State v. Anderson and Hochstein, supra* at 72, 296 N.W.2d at 453: "[T]he traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence." See, also, *State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981); *State v. Kramer*, 203 Neb. 658, 279 N.W.2d 634 (1979); *State v. Holzapfel*, 192 Neb. 672, 223 N.W.2d 670 (1974).

Before the sentencing hearing, Williams and his attorney reviewed the presentence report. At the sentencing hearing Williams' attorney made objections concerning various aspects of the presentence report. It is, therefore, obvious that the sentencing court fully complied with the requirement of due process regarding Williams' presentence report. See *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). While overruling Williams' objections regarding the presentence report, the sentencing court assured Williams that any irrelevant information contained in the presentence investigation would be disregarded: "The Court can screen out those matters which are not relevant to the sentence of the Court." The sentencing court sustained Williams' objection to the use of his 66-page statement concerning Williams' violent activities in Iowa and Minnesota after the murders and sexual assault in Nebraska. Under the circumstances, use of the presentence report at the sentencing hearing did not violate Williams' right to confrontation or any other constitutional right required to be protected in the course of a sentencing hearing. See *State v. Reeves, supra*. No constitutional rights of Williams were violated by use of the presentence report.

Williams contends that Neb. Rev. Stat. § 29-2523(1)(d) (Reissue 1979), "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence," is unconstitutionally vague. "Neb. Rev. Stat. § 29-2523(1)(d) (Reissue 1979), as interpreted by the decisions of this court, is not unconstitutionally vague." (Syllabus of the court.) *State v. Reeves, supra.* Williams makes much of the fact that the sentencing court found and stated that the murders were "totally bereft of any regard for human life," whereas the phrase "totally *and senselessly* bereft of any regard for human life" has been previously used by this court in reference to § 29-2523(1)(d). (Emphasis supplied.) (Syllabus of the court.) See, *State v. Holtan,* 197 Neb. 544, 250 N.W.2d 876 (1977); *State v. Moore,* 210 Neb. 457, 316 N.W.2d 33 (1982). In Williams' case the sentencing court found beyond a reasonable doubt that each of the murders committed by Williams "was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." Subsection (1)(d) requires a court to find by evidence beyond a reasonable doubt that the aggravating circumstance exists in the light of the statutory standard. The word "senselessly," utilized by the court in *Holtan* and *Moore,* was illustrative language for construing the statutory standard imposed by subsection (1)(d). If Williams' acts were bereft of any regard for human life, such acts were simultaneously and senselessly bereft of any regard for human life. When the court specifically found and expressly stated that the murders were committed under the aggravating circumstance described in § 29-2523(1)(d), the sentencing court did not commit error by omitting the word "senselessly" in characterizing the murders committed by Williams.

Williams' contention that the trial court should have required the State to prove the absence of any

mitigating circumstances is disposed by *State v. Moore, supra* at 480, 316 N.W.2d at 46: "If there were any mitigating factors other than those shown, the defendant is in the best position to know and reveal those factors." Whether mitigating factors existed was a question at the sentencing hearing and a matter for a direct appeal rather than proceedings for post conviction relief. Williams' contention regarding the absence of mitigating circumstances is without merit.

Williams argues that his constitutional rights were violated because a jury did not participate in his sentencing. "Jury sentencing in capital cases is not constitutionally required." (Syllabus of the court.) *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). See, also, *State v. Moore, supra.* There is no merit in Williams' argument that a jury should have participated in the sentencing process.

Williams asserts that the sentencing court "overlapped" statutory aggravating circumstances subsection (1)(b), "The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime," and subsection (1)(e), "At the time the murder was committed, the offender also committed another murder." Williams relies on *State v. Stewart*, 197 Neb. 497, 522, 250 N.W.2d 849, 864 (1977), "that subsections (1)(b) and (1)(c) are separate and distinct circumstances and should be construed so as not to overlap." The record before us demonstrates that the aggravating circumstances described by subsections (1)(b) and (e) were not comprised of the same facts and did not overlap. The aggravating circumstance of subsection (1)(b) existed because "the murder of Catherine M. Brooks was committed in an apparent effort to conceal the identity of the perpetrator of a crime," while the aggravating circumstance of subsection (1)(e) existed because Williams killed *both* Catherine M. Brooks and Patricia A. McGarry "at or about the same time." The

statutory aggravating circumstances indicated in subsections (1)(b) and (e) were distinct from each other. The existence of the aggravating circumstance described in subsection (1)(b) had no mutuality to the aggravating circumstance described in subsection (1)(e). Such independent existence of aggravating circumstances in this case prevents an overlapping of the statutory aggravating circumstances. Williams' claim of overlapping aggravating circumstances has no merit.

Williams next contends that the two death sentences constitute cruel and unusual punishment. Williams cites no authority for this proposition. This court has previously determined that the death penalty is not unconstitutional in all circumstances as constituting cruel and unusual punishment. See *State v. Moore,* 210 Neb. 457, 316 N.W.2d 33 (1982). See, also, *Gregg v. Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976). Consequently, imposition of the death penalty for each of the contemporaneous murders occurring on August 10, 1977, was not error on the part of the sentencing court.

Williams next contends that § 29-2523(1)(a), "The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity," is unconstitutionally vague. This issue was raised and resolved adversely to Williams in his direct appeal. See *State v. Williams,* 205 Neb. 56, 287 N.W.2d 18 (1979). Furthermore, this question was answered in *State v. Rust,* 197 Neb. 528, 535, 250 N.W.2d 867, 873 (1977), "[T]he definition of aggravating circumstance (a) is clear." See, also, *State v. Moore, supra; State v. Harper,* 208 Neb. 568, 304 N.W.2d 663 (1981).

Williams asserts that this court applied Neb. Rev. Stat. §§ 29-2519 et seq. (Reissue 1979) in an ex post

facto manner. At the time the homicides were committed, Nebraska law prohibited murder in the first degree (see Neb. Rev. Stat. § 28-401 (Reissue 1975); cf. Neb. Rev. Stat. § 28-303 (Reissue 1979)) and permitted the death penalty as punishment on conviction of the crime of murder in the first degree. The offense charged and the penalty permissible upon conviction existed at all times pertinent to disposition of the charges against Williams. The standards imposed by 1978 Neb. Laws, L.B. 711 (§§ 29-2521.01 et seq.), did not enhance the penalty which might attach upon conviction of first degree murder. Williams' claim of ex post facto application of §§ 29-2519 et seq. is without merit.

Williams contends that the comparative analysis employed by this court, as required by L.B. 711 (§§ 29-2521.01 et seq.), must include a review of all penalties imposed for convictions of criminal homicide. This issue was decided adversely to Williams in his direct appeal. See *State v. Williams, supra.* Because the post conviction act cannot be used to "secure a further review of issues already litigated," this assignment of error is also without merit. See, *State v. Peery*, 208 Neb. 639, 640, 305 N.W.2d 354, 355 (1981); *State v. Holtan*, 205 Neb. 314, 287 N.W.2d 671 (1980).

Williams alleges the sentencing court restricted and prevented him from presenting nonstatutory mitigating circumstances of an unspecified nature. All evidence offered by Williams at the sentencing hearing was admitted. This assignment of error is without merit.

The second general category of error alleged by Williams relates to jury selection and instructions.

Williams contends voir dire examination by "death qualifying" the jury leads to an unconstitutional, conviction-prone jury and argues the death qualification procedure for voir dire examination of a jury, as approved by the U.S. Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S. Ct. 1770,

20 L. Ed. 2d 776 (1968), cannot be applied in first degree murder trials in Nebraska. In *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984), we said:

> The trial court did not err in allowing the questioning of jurors as to whether their scruples against the death penalty would prevent them from returning a verdict of guilty regardless of the evidence, even though the jury was not to impose punishment and even though the defendant contended that the questioning led to a conviction-prone jury.

(Syllabus of the court.) The voir dire examination of prospective jurors did not violate any constitutional right of Williams, and Williams' assignment of error in this regard cannot be sustained.

The trial court refused to instruct the jury about the consequence of a verdict of not guilty by reason of insanity. Williams claims such refusal on the part of the trial court constitutes error. This question was raised and disposed of in Williams' direct appeal. See *State v. Williams*, *supra*. See *State v. Reitenbaugh*, 204 Neb. 583, 284 N.W.2d 19 (1979): "It is not error to refuse to instruct a jury in a criminal case of the consequences of a verdict of not guilty by reason of insanity." (Syllabus of the court.) See, also, *State v. Reeves*, *supra*. This assignment of error regarding the refused instruction is without merit.

The third and last category of alleged error claimed by Williams relates to assistance and effectiveness of counsel.

At trial, on direct appeal, and during the post conviction proceedings, Williams was represented by members of the Lancaster County public defender's office. Williams contends that the trial court in the post conviction proceedings should have granted the public defender's motion to withdraw so that counsel outside the public defender's office might be substituted for more effective pursuit of Williams' claim regarding ineffective counsel on the part of the

public defender. Although the public defender's motion was not granted, counsel outside the public defender's office has been appointed for the purpose of this appeal. Error, if any, regarding counsel in the post conviction proceedings has been cured by appointment of substitute counsel outside the public defender's office for the purpose of Williams' appeal in the post conviction proceedings. Williams' assignment of error regarding assistance of counsel in the proceedings before the district court is overruled.

Williams claims ineffective appellate counsel, because all possible issues on appeal were not argued. Williams believes he has a constitutional right to control issues to be raised on appeal and claims that he has not waived such right to control appellate issues.

In *Jones v. Barnes*, ____ U.S. ____, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), the U.S. Supreme Court held that an indigent defendant has no constitutional right to control the matters argued by counsel on appeal.

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Justice Jackson, after observing appellate advocates for many years, stated: "One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one. . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, *Ad-*

*vocacy Before the Supreme Court*, 25 Temple L.Q. 115, 119 (1951). Justice Jackson's observation echoes the advice of countless advocates before him and since. An authoritative work on appellate practice observes: "Most cases present only one, two, or three significant questions. . . . Usually, . . . if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention. The effect of adding weak arguments will be to dilute the force of the stronger ones." R. Stern, Appellate Practice in the United States 266 (1981).

There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often to as little as 15 minutes—and when page limits on briefs are widely imposed. See, *e.g.*, Fed.Rules App.Proc. 28(g); McKinney's 1982 New York Rules of Court §§ 670.17(g)(2), 670.22. . . . A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, "go for the jugular," Davis, *The Argument of an Appeal*, 26 A.B.A.J. 895, 897 (1940)—in a verbal mound made up of strong and weak contentions. See generally, *e.g.*, Godbold, *Twenty Pages and Twenty Minutes—Effective Advocacy on Appeal*, 30 Sw.L.J. 801 (1976).

*Jones v. Barnes*, *supra* at ____, 103 S. Ct. at 3312-13. "Absent exceptional circumstances, [the defendant] is bound by the tactics used by his counsel at trial and on appeal." *Id*. at ____, 103 S. Ct. at 3316-17 (Brennan and Marshall, JJ., dissenting), citing *Henry v. Mississippi*, 379 U.S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1963).

There is no doubt that a waiver has occurred, but the question to be determined is whether such waiver demonstrates ineffectiveness on the part of Williams' appellate counsel. We agree with the opinion expressed by the U.S. Supreme Court in *Jones v. Barnes, supra,* where the defendant asserted that his counsel was ineffective because the defendant was not permitted to select the issues to be argued for appellate review of the defendant's conviction. In the case before us Williams proclaims 13 self-styled "things" to be considered in appellate review of his conviction and sentence during his direct appeal. Reviewing the 33 errors now raised in this appeal involving Williams' claim for post conviction relief, and, further, reviewing the 12 assignments of error presented by Williams in his direct appeal, we conclude that Williams' counsel has selectively and effectively argued all material questions pertinent to Williams' conviction and sentence.

Regarding Williams' general contention that all counsel have been ineffective, we recognize that the test of effective assistance of counsel requires that a defendant's attorney perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area and that counsel conscientiously protect the interests of his client. See *State v. Beans,* 212 Neb. 31, 321 N.W.2d 72 (1982). Based on the record before us, we are satisfied that Williams had effective assistance of counsel in every proceeding against or involving him.

If an examination of the files and records discloses that a defendant is not entitled to relief, the trial court may overrule a motion for post conviction relief without an evidentiary hearing. See, *State v. Woods,* 180 Neb. 282, 142 N.W.2d 339 (1966); *State v. Reyes,* 192 Neb. 153, 219 N.W.2d 238 (1974); *State v. Paulson,* 211 Neb. 711, 320 N.W.2d 115 (1982). Findings of a district court in denying post conviction relief will not be disturbed on appeal unless they are clearly erroneous. *State v. Paulson, supra;*

*Marteney v. State*, 210 Neb. 172, 313 N.W.2d 449 (1981). The record before us does not disclose any clearly erroneous finding by the district court in denying post conviction relief to Williams. The district court did not commit error in denying an evidentiary hearing before overruling Williams' motion for post conviction relief. The judgment of the district court is affirmed in all respects.

AFFIRMED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

With the exception of that portion of the majority opinion which affirms the imposition of the death penalty, I concur in all that the majority has said, and believe that, but for the issue involving the imposition of the death penalty, Williams' claim for post conviction relief is without merit. However, because of my view regarding the imposition of the death penalty and its constitutional implications, as more particularly set out in my dissent in *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979), I must again dissent from that portion of the majority opinion which, by affirming the trial court's denial of post conviction relief, affirmed the imposition of the death penalty in this case.