NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| HALEY B., ) | |
| ) | Supreme Court No. S-16562 |
| Appellant, ) | |
| ) | Superior Court Nos. 3PA-15-00078/ |
| v. ) | 00079/00080 CN |
| ) | |
| STATE OF ALASKA, ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & ) | AND JUDGMENT[*] |
| SOCIAL SERVICES, OFFICE OF ) | |
| CHILDREN'S SERVICES, ) | No. 1650 – October 19, 2017 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. David T. Jones, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

# I.    INTRODUCTION

The superior court terminated a mother's parental rights to three of her children. The mother now appeals, arguing that her trial counsel was ineffective and that

---

[*]    Entered under Alaska Appellate Rule 214.

the superior court erred in making the failure to remedy and best interests findings. Because the mother's trial counsel was not ineffective under our precedent and the failure to remedy and best interests findings were not clearly erroneous, we affirm the termination of the mother's parental rights.

## II.    FACTS AND PROCEEDINGS

### A.    Background Information And OCS's Involvement

Haley B.[1] and Edward W.[2] have three children together: Sam, age 7 at trial; Fran, age 6 at trial; and Jessa, age 3 at trial. In February 2015 the Office of Children's Services (OCS) received a report that Edward had violated his probation for theft, and a caseworker who visited the family's home in March suspected that Haley, who suffered a lot of pain from back injuries sustained when she was younger, was abusing drugs. In April OCS received a report that Sam was missing a lot of school, due to his parents' drug use, which made it impossible for him to wake them up in the morning. Sam also described being physically abused by Edward and witnessing physical fighting between his parents. Also in April, Jessa, who was 19 months old at the time, had a hair follicle test positive for methamphetamine. Because of these reports, OCS took emergency custody of the three children later that month.

The children were initially placed with Rory B., Haley's mother. OCS then placed the children with a foster mother, their paternal aunt, in December 2015. OCS arranged supervised visitation between the children and Haley, which Haley attended fairly consistently. The two older children struggled with behavioral issues and saw therapists over the course of the case; by the time of the trial, all the children had made progress under their aunt's care.

---

[1]    Pseudonyms have been used for the family members.

[2]    Edward consented to adoption and is not part of this appeal.

Haley's substance abuse was ongoing throughout the case. She stated that over the course of her life she has used alcohol, heroin, opiates, methamphetamine, cocaine, marijuana, and Adderal in ways for which it was not prescribed. OCS developed a case plan and referred her for urinalyses (UAs) and a substance abuse assessment, and Haley completed the assessment in May 2015. The assessment recommended mental health, pain management, and domestic violence support services. Of those referrals, Haley followed up only with the pain management services, although she also took parenting classes at the beginning of the case. Through the pain management services, she continued receiving prescribed opiates, which she had become dependent on; at the same time, she continued using other drugs, including methamphetamine and heroin.

It took Haley about a year after her children were removed to engage in other recommended services, despite several attempts by OCS to remind her of case plan requirements. In the spring of 2016, she started attending counseling and domestic violence classes. Also in May, she started intensive outpatient treatment at Alaska Family Services (AFS) and began a Suboxone program designed to wean her off opiates. She made some progress in treatment, but she repeatedly tested positive for substances in or failed to report for UAs. Due to her relapses, Haley was discharged from treatment in October. She also was arrested in September 2016 due to a violent altercation with Edward. She quickly obtained a new assessment and started an outpatient program at Akeela House Recovery Center (a drug and alcohol addiction rehabilitation center). But she elected not to begin recommended residential treatment for substance abuse, and her reporting for UAs remained inconsistent until trial.

On September 14, Haley's lawyer filed a motion for a review hearing requesting that the children have a trial home visit with Haley, who was living with her mother, Rory. OCS filed a petition to terminate Haley's parental rights on September 26.

The filings were addressed jointly at a two-day proceeding beginning on November 30, and because the superior court decided to terminate Haley's parental rights, it did not rule on the trial home visit motion. Haley's trial counsel conceded that circumstances had changed since she had requested the trial home visit and did not request a continuance to postpone the termination trial.

## B.     The Termination Trial

Haley stipulated that the children were in need of aid[3] and that OCS had provided reasonable efforts to allow the children to return to her care,[4] so the trial addressed only whether Haley had failed to remedy her conduct[5] and whether termination was in the children's best interests.[6]

Haley, her mother, and the children's foster mother testified at trial. Haley admitted she had not reported for several UAs, but she blamed her behavior on "work issues, transportation issues, [and] paperwork not being turned in" by OCS. She was unable to explain several positive UAs for substances including methamphetamine and morphine and maintained that the Suboxone program was working for her. She explained that she refused to enter residential treatment after being discharged from AFS because she was concerned about not being able to see her children. But she admitted that she had not fully investigated whether OCS would have been able to facilitate visitation for her. She testified that she understood the harmful effects that her behavior

---

[3]     The stipulation was under AS 47.10.011(10), which deems a child in need of aid if a parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."

[4]     AS 47.10.086.

[5]     AS 47.10.088(a)(2)(B).

[6]     AS 47.10.088(b).

had had on her children but believed that she could safely parent her children without finishing treatment.

Rory testified that she had seen "major improvement" in Haley and that she did not think Haley had been using drugs recently. She supported allowing Haley to be around the children whether or not she was still using drugs. On cross-examination it became apparent that Rory did not know why Haley had been discharged from AFS. The children's foster mother testified that Sam and Fran had made progress behaviorally since coming into her care and that Jessa was progressing normally for a child her age.

Staff from OCS and AFS also testified. The OCS caseworker who had worked with Haley since June 2015 testified that Haley had not engaged in AFS services until April 2016 even though she had instructed Haley multiple times to see AFS. She testified about Haley's missed UAs and stated that from OCS's records it was not possible to verify that Haley had been clean and sober for more than one month during the case. The caseworker opined that it would take at least nine months to a year before the children could safely be placed with Haley and that termination of Haley's parental rights would be in the children's best interests. Haley's substance abuse counselor from AFS testified that Haley had made some progress in treatment but at this point remained in "denial" and unable to discontinue her substance abuse.

After the trial the superior court entered a written order terminating Haley's parental rights to Sam, Fran, and Jessa. Haley now appeals, arguing that she received ineffective assistance of counsel at trial and that the superior court erred in making the failure to remedy and best interests findings.

## III. DISCUSSION

### A. Haley's Trial Counsel Was Not Ineffective.

Haley argues that she did not receive effective assistance of counsel at trial.

Specifically, she points to her trial counsel's failure to ask for a continuance to allow her to complete treatment and her agreement to stipulate to the reasonable efforts finding.[7]

We apply a two-prong test to ineffective assistance of counsel claims. First, "the litigant must show that her attorney's performance was below a level that any reasonably competent attorney would provide, bearing in mind that 'reasonable tactical decisions are virtually immune from subsequent challenge even if, in hindsight, better approaches could have been taken.' "[8] Second, "the litigant must demonstrate that counsel's improved performance would have affected the outcome of the case."[9] We conclude that Haley's arguments fail to satisfy the first prong, and therefore we decline to reach the second prong.

### 1. Failure to request a continuance

On September 14, 2016, Haley's trial counsel filed a motion for a review hearing and requested a trial home visit at Rory's home. OCS filed a petition to terminate Haley's parental rights on September 26. The next day the court held a status hearing to address both filings. Around the same time, Haley was arrested for domestic

---

[7] Haley also argues that her trial counsel was ineffective because she failed to argue that the matter should be considered under the Indian Child Welfare Act (ICWA), but acknowledges that "the record does not provide adequate information to support this claim." We therefore do not address this argument.

[8] *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1265 (Alaska 2014) (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 858-59 (Alaska 2013)).

[9] *Id.* (citing *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 784 (Alaska 2012)).

violence against Edward and discharged from AFS. Haley argues that her trial counsel provided ineffective assistance by failing to ask for a continuance pursuant to AS 47.10.088(j) at or after the status hearing.[10]

There are several tactical reasons why Haley's attorney may have decided not to ask for a continuance.[11] Haley had recently relapsed and risked doing so again due to her refusal to enter residential treatment, and delay could have produced additional evidence that the children were improving in their foster placement. Haley argues that the trial could have been continued for four months without a showing of good cause. But a continuance of four months, even assuming the superior court granted it, would have been of little tactical use because testimony at trial indicated that Haley needed nine months to a year before the children could safely be placed with her.

Furthermore Haley has not demonstrated that her trial counsel was responsible for the timing of the trial. Rather than supporting her argument with citations from the status hearing transcript, she quotes log notes for the proposition that her trial counsel "opposed six months out for the removal hearing."[12] But this ambiguous quote does not help her argument, as it could mean that her lawyer wanted to hold a hearing

---

[10]    "No later than six months after the date on which the petition to terminate parental rights is filed, the court before which the petition is pending shall hold a trial on the petition unless the court finds that good cause is shown for a continuance." AS 47.10.088(j).

[11]    *See, e.g.*, *Poindexter v. Mitchell*, 454 F.3d 564, 574-75 (6th Cir. 2006) (characterizing failure to request a continuance to investigate potential alibi as "strategic" and finding no ineffective assistance of counsel on that basis).

[12]    Citations to hearing recordings or transcripts are preferred over citations to log notes. *See, e.g.*, *Joe v. State*, 565 P.2d 508, 510 (Alaska 1977) (calling log notes "skeletal" and implying that "a malfunction in the courtroom electronic recording equipment" was the only reason to consider log notes in that case).

to review the removal either before or after six months had elapsed. Indeed, a discussion at trial supports the conclusion that there was some miscommunication on this issue; at one point, the court stated that Haley's trial counsel had "insisted on" having a review hearing directly precede the termination trial, and Haley's trial counsel responded "[t]hat was [her] understanding of how the court wanted to proceed." On this record, Haley's attorney's decision to go forward with the trial did not constitute performance "below a level that any reasonably competent attorney would provide."[13]

### 2. Stipulation on reasonable efforts

Under AS 47.10.086(a), OCS "shall make timely, reasonable efforts to provide family support services to the child and to the parents or guardian of the child that are designed to prevent out-of-home placement of the child." At trial, Haley's counsel stipulated to reasonable efforts by OCS, despite previously arguing that OCS had not made the required efforts. Haley now argues that her "trial counsel was also ineffective for stipulating to reasonable efforts."

A lawyer is permitted to prioritize strong arguments over those she perceives as weak.[14] Here there was substantial evidence that OCS made reasonable

---

[13] *Chloe W.*, 336 P.3d at 1265 (citing *Chloe O.*, 309 P.3d at 858-59 (Alaska 2013)).

[14] *See id.* at 1265-66 (calling "hard to fathom" the idea that stipulation preventing adverse testimony was not tactical); *Coffman v. State*, 172 P.3d 804, 811 (Alaska App. 2007) ("The effect of adding weak arguments will be to dilute the force of the stronger ones." (quoting *State v. Williams*, 352 N.W.2d 538, 544 (Neb. 1984))); *see also* Bell v. Cone, 535 U.S. 685, 699-702 (2002) (holding that counsel's decisions not to call defendant as a witness, not to recall other witnesses, and to waive final argument were within the permissible range of competency); *Smith v. Murray*, 477 U.S. 527, 536 (1986) (declaring integral to appellate advocacy the process of "winnowing out weaker arguments . . . and focusing on" stronger ones (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983))); *Crain v. State*, 78 So. 3d 1025, 1037 (Fla. 2011) (calling stipulation
(continued...)

efforts to allow Haley to regain custody: OCS created a case plan for Haley, referred her for assessments and UAs, met with her multiple times to discuss her progress, arranged visitation with the children, and provided a bus pass for her transportation. Presented with this evidence, a competent attorney could have concluded that the superior court would find that OCS made reasonable efforts. And despite the stipulation, the court did in fact make such a finding in its written order. We thus conclude that Haley's trial counsel did not perform "below a level that any reasonably competent attorney would provide"[15] by declining to argue this issue.

## B.    The Factual Findings Supporting Termination

Haley argues that the superior court's failure to remedy and best interests findings were clearly erroneous. We disagree. "Whether a parent has remedied the conduct or conditions that placed the child[ren] in need of aid is a factual determination 'best made by a trial court after hearing testimony and reviewing evidence.' "[16] Similarly, "the court's determination that terminating parental rights is in the child[ren]'s best interest[s] [is a] factual determination[]."[17] We review factual findings for clear error, which we find "only when a review of the entire record leaves us 'with a definite

---

[14](...continued) "strategic decision").

[15]    *Chloe W.*, 336 P.3d at 1265 (citing *Chloe O.*, 309 P.3d at 858-59).

[16]    *Matthew H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 397 P.3d 279, 282 (Alaska 2017) (quoting *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

[17]    *Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 255 P.3d 1003, 1008 (Alaska 2011) (citing *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850 (Alaska 2009)).

and firm conviction that the superior court has made a mistake.' "[18]  We therefore "ordinarily [will] not overturn a superior court's findings based on conflicting evidence."[19]

### 1.  The failure to remedy finding was not clearly erroneous.

As required by the CINA rules,[20] the superior court found that Haley had not remedied her substance abuse within a reasonable time.  Haley argues that she should have been given more time to complete her case plan and that the children could have been safely placed with Haley in Rory's home.

But the superior court had ample evidence upon which to base the failure to remedy finding, and Haley offers only competing inferences.  We have stated that "[f]indings of continued substance abuse and refusal to undergo treatment are sufficient to satisfy failure to remedy."[21]  Haley did not begin substance abuse treatment in earnest until about a year after the beginning of her case, and once she did, she frequently submitted positive UA samples or failed to report for UAs at all.  The testimony from her OCS caseworker and her AFS counselor indicated that her substance abuse continued throughout the case.  And when she was discharged from AFS six weeks before trial, she declined the recommended residential treatment.

---

[18]  *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 774 (Alaska 2012) (quoting *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122 (Alaska 2002)).

[19]  *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (citing *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003)).

[20]  CINA Rule 18(c)(1)(A).

[21]  *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1268 (Alaska 2014).

Haley argues that the time allotted her was "plainly too short." But she fails to address cases in which we have upheld termination after fewer than nineteen months, the amount of time between her children's removal and the termination trial.[22] And while Haley argues that the children would not be at risk of harm if they lived at their grandmother's house, Rory's testimony suggested that Rory was not aware of the extent of her daughter's drug use and that she would allow Haley to care for the children despite that drug use. We conclude that the superior court's finding that Haley had not remedied her conduct was not clearly erroneous.

### 2. The best interests finding was not clearly erroneous.

The superior court also found that termination of Haley's parental rights was in the children's best interests.[23] Haley argues that the superior court did not consider either the statutory best interests factors or her strong bond with her children and that it erroneously concluded that the children had "made tremendous behavioral strides" in foster care.

We have stated that the superior court may, but need not, consider the statutory best interest factors.[24] Similarly, the superior court may consider the bond

---

[22] *See, e.g.*, *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1107, 1112 (Alaska 2011) (upholding termination after 13 months); *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 844, 853 (Alaska 2014) (upholding termination after 14 months).

[23] *See* CINA Rule 18(c)(3).

[24] *See, e.g.*, *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 966-67 (Alaska 2013) (treating factors as "guidance" applicable to the best interests finding); *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263 (Alaska 2010) ("The best interest factors listed in the statute are not exclusive and the superior court need not accord a particular weight to any given factor."). The factors are:

(continued...)

between children and their parents,[25] but it is not required to give particular weight to this factor.

In this case, the superior court's conclusion that the children had improved in foster care was supported by the foster mother's testimony about Sam's and Fran's progress, as well as by a caseworker's testimony that termination of Haley's parental rights would be in the children's best interests. Haley's argument that other testimony "contradicted" this testimony is inadequate because we "ordinarily [will] not overturn a superior court's findings based on conflicting evidence."[26]

The superior court also noted that Haley's "severe and untreated substance abuse" continued to pose a risk of harm to her children, and it contrasted her situation with the foster parent's ability to provide a "stable, loving home with family support." Based on this evidence, it was not clearly erroneous for the superior court to conclude that terminating Haley's parental rights was in the children's best interests.

---

[24](...continued)
    (1)  the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;
    (2)  the amount of effort by the parent to remedy the conduct or the conditions in the home;
    (3)  the harm caused to the child;
    (4) the likelihood that the harmful conduct will continue; and
    (5)  the history of conduct by or conditions created by the parent.

AS 47.10.088(b).

[25]    *See Karrie B. ex rel. Reep v. Catherine J.*, 181 P.3d 177, 186-87 (Alaska 2008).

[26]    *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (citing *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003)).

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's termination of Haley's parental rights.