**IT IS HEREBY ORDERED** that defendants' motion for partial summary judgment is granted.

**Robert E. WILLIAMS, Petitioner,**

v.

**Harold CLARKE, Respondent.**

No. 4:CV87-0-134.

United States District Court, D. Nebraska.

March 16, 1993.

Robert E. Williams, pro se.

James H. Hoppe, Watkins, Scott Law Firm, Lincoln, NE, for petitioner.

William L. Howland, Neb. Dept. of Justice, Lincoln, NE, for respondent.

## MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on the memorandum, order and recommendation of the magistrate judge (Filing No. 27), the objections of petitioner to the findings of the magistrate judge (Filing Nos. 29 and 31), and the response of the respondent advising the Court that respondent had no objection to the report and recommendation of the magistrate judge (Filing No. 30). Neither party has submitted any additional briefs.

Because of the amount of time which has elapsed since the filing of petitioner's motion

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, a brief summary of the procedural history of this case is in order. On March 3, 1987, petitioner filed his first petition under 28 U.S.C. § 2254 (Filing No. 2). The respondent was ordered to file an answer and on April 21, 1987, filed a motion to dismiss or for more definite statement (Filing No. 5), which was denied on April 28, 1987 (Filing No. 6). Then the petitioner filed an amended petition on November 20, 1987 (Filing No. 11). On January 14, 1988, respondent filed his answer (Filing No. 13). On February 11, 1988, a scheduling order was entered by the Court (Filing No. 17). On January 11, 1989, the magistrate judge entered an order calling to the parties' attention their failure to comply with his scheduling order and directing that it be complied with in ten (10) days, or show cause in writing why this matter should not be dismissed and counsel found in contempt or subjected to other disciplinary measures by the Court (Filing No. 21). The parties then filed a certificate of filing of the record and stipulation, as had been previously required by the Court. On October 20, 1989, the magistrate judge entered his memorandum and order (Filing No. 24), in which he analyzed each of the claims being made by petitioner, finding that they were without merit except the petitioner's challenge to the aggravating factor set forth in Neb.Rev.Stat. § 29–2523(1)(d) as it applied to the sentence of death imposed upon defendant for the murder of Patricia McGarry. The magistrate judge then stayed this action pending a final decision in *Moore v. Clarke*, 904 F.2d 1226 (8th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992). On July 15, 1992, the magistrate judge entered a further memorandum, order and recommendation (Filing No. 27), in which the Court recommended that the amended petition for habeas corpus relief be granted as to the petitioner's claim that the aggravating factor set forth in Neb. Rev.Stat. § 29–2523(1)(d) is unconstitutionally vague as applied to the petitioner in the murder of Patricia McGarry, and that in all other respects, the amended petition for writ of habeas corpus should be denied. That order further granted the parties forty (40) days from its date in which to file objections to the recommendation. The parties have filed their respective responses to the magistrate judge's memorandum, order and recommendation, as noted above, and this case is now ready for final decision.

Initially in his amended petition, petitioner raised thirteen (13) claims as the basis for the granting of that petition. In petitioner's brief, seven (7) of those were abandoned (Magistrate judge's memorandum and order (Filing No. 24)). The six (6) claims which remain and which were addressed by the magistrate judge in his memorandum and order and to which petitioner has filed objections are:

1) Petitioner was unconstitutionally denied a jury trial on the issue of the death penalty in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States (¶ 12C).

2) Petitioner was denied his constitutional rights as a result of the three-judge sentencing panel's use of a presentence investigation as its use denied petitioner his constitutional right to confront witnesses, to be represented by counsel, and to not incriminate himself, all in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution (¶ 12F).

3) Petitioner's rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated by the sentencing panel's finding that petitioner's crimes were "especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence, as an aggravating circumstance under Neb.Rev.Stat. 29–2523(1)(d) (¶ 12I).

4) Petitioner's right to a fair trial and due process under the Fifth and Fourteenth Amendments to the United States Constitution was violated as a result of exclusion of jurors with reservations concerning the death penalty (¶ 12K).

5) The petitioner's conviction was based upon a confession obtained in violation of petitioner's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments (¶ 12L).

6) The prosecution willfully and prejudicially withheld relevant and favorable evidence, thereby denying petitioner his constitutional rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution (¶ 12M).

■ Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of the record in this matter as it pertains to these six claims, and they will now be addressed.

1) Plaintiff's claim that he was entitled to a jury determination on the finding of the existence of aggravating circumstances necessary to support the death penalty

This claim is premised on the decision of the United States Court of Appeals for the Ninth Circuit in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988). The magistrate judge rejected petitioner's claim in a carefully reasoned analysis of *Adamson v. Ricketts* and the prior decisions of this Court. The magistrate judge's opinion recognized that the *Adamson* case was the subject of a pending petition for certiorari which had been filed with the United States Supreme Court. That petition was denied on June 28, 1990, 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). However, the day prior to the entry of that order, the Supreme Court decided *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). This case also addressed the issue of the right of a defendant to jury trial to determine the existence of aggravating or mitigating circumstances in a capital sentencing case. *Walton's* first argument to the Supreme Court was that every finding of fact underlying the sentencing decision must be made by a jury, not by a judge, and that the Arizona scheme would be constitutional only if the jury decides what aggravating and mitigating circumstances are present in a given case. This was essentially the same issue raised in *Adamson, supra.* The Supreme Court rejected that argument, stating any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence, has been soundly rejected by prior decisions of this Court, citing *Clemons v. Mississippi,* 494 U.S. 738, 745, 110 S.Ct.

1441, 1446, 108 L.Ed.2d 725 (1990). The Supreme Court went on to state:

Walton also suggests that in Florida aggravating factors are only sentencing "considerations" while in Arizona they are "elements of the offense." But as we observed in *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), an Arizona capital punishment case: "Aggravating circumstances are not separate penalties or offenses, but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment. Thus, under Arizona's capital sentencing scheme, the judge's finding of any particular aggravating circumstance does not of itself 'convict' a defendant (i.e., require the death penalty), and the failure to find any particular aggravating circumstance does not 'acquit' a defendant (i.e., preclude the death penalty)." *Id.,* at 156, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (citation omitted).

The Walton decision supports the magistrate judge's analysis and decision. The Court now approves and adopts the reasoning of the magistrate judge as it addresses this issue and finds that this claim is without merit and should be denied.

2) Use of the presentence report at sentencing hearing

The substance of this claim is petitioner's contention that he was deprived of his constitutional right to confront witnesses, his right to be represented by counsel, and his right not to incriminate himself by the sentencing panel's use of a presentence investigation report. As the magistrate judge noted, the petitioner cites no authority to support his claim. However, the magistrate judge went on to carefully review the applicable case law, and concluded that this claim was without merit. The petitioner has not cited any further case authority but simply takes exception to the findings of the magistrate judge as set forth in his memorandum and order. Having reviewed the briefs and the order of sentence and commitment entered by the District Court of Lancaster County, Nebraska, the Court now approves and adopts the magistrate judge's memorandum,

report and recommendation on this issue, and finds that it should be denied.

3) The vagueness of the aggravating factor set forth in Neb.Rev.Stat. § 29–2523(1)(d).

The magistrate judge found that this claim was valid as it applied to the sentencing of the petitioner for the murder of Patricia McGarry, but rejected petitioner's claim that it also was a basis for invalidating the sentence of petitioner for the murder of Catherine Brooks. The petitioner's objection is addressed only to that portion of the magistrate judge's opinion as it relates to the application of this factor to the determination of the sentence for the murder of Catherine Brooks.

Aggravating circumstance (1)(d) reads as follows:

The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence.

Neb.Rev.Stat. § 29–2523(1)(d).

The Nebraska Supreme Court has recognized that this aggravating circumstance "describes in the disjunctive two separate circumstances, which may operate in conjunction with or independent of one another." *State v. Moore*, 210 Neb. 457, 470, 316 N.W.2d 33 (1982).

The magistrate judge in his memorandum and order of October 20, 1989, recognized the two-prong nature of this aggravating circumstance and carefully analyzed the applicable law and the evidence as it related to this aggravating circumstance. The Court has reviewed the sentencing hearing (B.E. 3995–4053), the order of sentence and commitment (B.E. 4054–73; Ex. 2, Williams Trial Transcript), and the opinions of the Nebraska Supreme Court in the cases which have been cited in the magistrate judge's memorandum and opinion. *Moore v. Clarke*, 904 F.2d 1226 (8th Cir.1990), in effect affirms the magistrate judge's analysis and conclusions.

The Court notes that, other than objecting to this finding, petitioner has pointed the Court to no specific case or to any evidence which supports his objection that the magistrate judge erred in his findings and recommendation. For these reasons, the Court will approve and adopt the findings and recommendations of the magistrate judge.

4) Death qualified jury.

The magistrate judge disposed of this issue by reference to *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The petitioner cited no authority in his initial brief nor has he cited any authority since which would dictate a different result. Accordingly, the Court will approve and adopt the magistrate judge's findings and recommendations as it relates to this issue.

5) Whether petitioner's conviction was based upon a confession obtained in violation of his constitutional rights.

The Court has reviewed the portions of the Bill of Exceptions relating to the suppression hearings (B.E. 136–500), has reviewed the opinion of the district court denying the motion to suppress the statements made by the defendant, and the opinion of the Supreme Court addressing that issue, *State v. Williams*, 205 Neb. 56, 69–70, 287 N.W.2d 18 (1979), and the findings and recommendation of the magistrate judge which carefully reviews the evidence, and the applicable law.

While the petitioner in his amended motion for writ of habeas corpus requested an evidentiary hearing on the question of whether the defendant had made a request for counsel before he gave his confession, the magistrate judge noted that in neither petitioner's request or brief, did he mention the grounds which must be shown in order to entitle petitioner to such an evidentiary hearing, *see Warden v. Wyrick*, 770 F.2d 112 (8th Cir. 1985), nor did he make reference to any reasons why such a hearing should be required. In his objections to the magistrate judge's findings and recommendation, no further showing has been made in this respect. The Court, having carefully reviewed the record in this matter and conducted a *de novo* review of the hearing held in connection with the petitioner's motion to suppress, finds that the magistrate judge's findings and recommendations should be adopted and approved.

6) The prosecution willfully and prejudicially withheld relevant and favorable evidence.

The magistrate judge in his findings and recommendations noted that a defendant when seeking habeas relief has the burden to prove that his rights have been violated, and he may not rely upon speculation and conjecture to satisfy this burden, *Sargent v. Armontrout*, 841 F.2d 220, 226 (8th Cir.1988). The magistrate judge then notes that the petitioner had not submitted any evidence to the Court supporting his claim and has not sought to expand the record. The only reference which this Court notes that petitioner has made to this claimed evidence are the summaries which he has set forth in his original brief on appeal to the Supreme Court of Nebraska (Exhibit 3, pp. 48–53). Nearly all of those summaries constitute petitioner's paraphrasing of the exhibits to which he makes reference and upon which he premises this claim. The magistrate judge brought to petitioner's attention his failure to submit this evidence to the Court and his failure to expand the record to include that evidence in his memorandum and order of October 20, 1989. Petitioner still has not asked this Court for leave to include that evidence in the record or to expand the record to include that evidence, but simply states "that the prosecution's (sic) violated petitioner's constitutional right to discovery of exculpatory and/or mitigating evidence by withholding certain, relevant and favorable evidence relating to petitioner's insanity defense." Petitioner has given this Court nothing to review in which to determine whether there is any merit to this claim. The magistrate judge in his findings and recommendations again has carefully analyzed the law, setting forth the petitioner's burden and concluding that it was impossible for the Court to determine whether the referenced evidence was either favorable or material to the petitioner's defense since the evidence had not been made available to the Court.

In addition to reviewing the briefs of the parties, the Court has also reviewed the opinion of the Supreme Court of Nebraska (*State v. Williams, supra*, 205 Neb. at 70–72, 287 N.W.2d 18). Considering the record presented and the analysis of the magistrate judge, the Court finds that his findings and recommendations with respect to this issue should be approved and adopted. A separate order will be entered herein accordance with this memorandum opinion.

## MEMORANDUM, ORDER, AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

This case was stayed in October, 1989 as a result of the pending appeal in *Moore v. Grammer*, CV84–L–754. The respondent has now filed a request to reactivate this case in light of the finality of *Moore*. See, *Moore v. Clarke*, 904 F.2d 1226 (8th Cir.1990) *reh'g denied*, 951 F.2d 895 (1991), *cert. denied* — U.S. ——, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992). No opposition brief to the respondent's motion has been received. The matter will, therefore, be reactivated.

In my memorandum and order of October 20, 1989, filing 24, I discussed all of the petitioner's claims, concluding that habeas relief should be denied with the exception of his claim challenging the application of aggravating circumstance (1)(d) to the murder of Patricia McGarry. The Eighth Circuit's decision in *Moore* confirms that this is the appropriate course. I shall, therefore, recommend that relief be granted as to that one claim, and denied in all other respects.

Because this is a capital case, I shall provide additional time for filing objections to the report and recommendation, as incorporated herein.

IT THEREFORE HEREBY IS ORDERED:

1. The respondent's motion for decision, filing 25, is granted, and this case is reactivated and placed upon the active docket of Chief Judge Lyle E. Strom.

2. The parties are given forty days from the date of this order in which to file their objections to the recommendation which follows.

IT HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. Sec. 636(b), to the Honorable Lyle E. Strom, Chief Judge, that the petition for habeas corpus relief be granted as to Claim 3, that is, that Neb.Rev.Stat. Sec. 29–2523(1)(d) is unconstitutionally vague as

applied to the petitioner in the murder of Patricia McGarry. The writ of habeas corpus should issue unless the respondent initiates resentencing proceedings of the petitioner for the murder of Patricia McGarry, within a reasonable time following the entry of judgment. It is recommended that habeas corpus relief be denied as to all of the other claims of the petitioner as set forth and discussed in the memorandum and order of October 20, 1989, filing 24, which is hereby incorporated by this reference.

The parties are hereby notified that unless objection is made within forty days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated July 15, 1992.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

The petitioner in this habeas action was convicted of two counts of first degree murder and one count of first degree sexual assault, and was sentenced to death by electrocution on each count of murder and to imprisonment for not less than eight and one-third years nor more than 25 years on the sexual assault count. The convictions and sentences were affirmed on direct appeal to the Nebraska Supreme Court in *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979), and the United States Supreme Court denied certiorari in *Williams v. Nebraska*, 449 U.S. 891, 101 S.Ct. 255, 66 L.Ed.2d 120 (1980). These appeals were followed by two state post-conviction actions which ultimately resulted in three further appearances before the Nebraska Supreme Court. In his first post-conviction action the District Court of Lancaster County, Nebraska denied relief

and that judgment was affirmed on appeal by the Nebraska Supreme Court in *State v. Williams*, 217 Neb. 539, 352 N.W.2d 538 (1984). Petitioner then filed a second motion for post-conviction relief which was denied by the district court. On appeal, however, that judgment was affirmed in part, and in part reversed and remanded to the district court for an evidentiary hearing on questions raised regarding a possible conflict of interest on the part of defense counsel who represented petitioner at trial, on direct appeal and in his first post-conviction action. *State v. Williams*, 218 Neb. 618, 358 N.W.2d 195 (1984). On remand an evidentiary hearing was conducted, after which the district court found that petitioner had failed to prove his allegations, and it denied relief. The judgment of the district court was affirmed by the Nebraska Supreme Court in *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986). Petitioner then filed with this court the present action for writ of habeas corpus in which, by his amended petition, he raises thirteen claims; however, seven of those claims have been voluntarily abandoned by the petitioner in his brief in support of the petition.[1] Therefore, the following six claims are raised by the petitioner in this action:

1. Petitioner was denied a jury determination on the finding of the existence of aggravating circumstances necessary to support a sentence of death.

2. Petitioner's rights to confront witnesses, to be represented by counsel, and against self-incrimination were violated by the sentencing panel's use of a pre-sentence investigation.

3. Nebraska's statutory aggravating circumstance § 29–2523(1)(d) is unconstitutionally vague.

4. The "death qualification" process used in jury selection in capital cases, including

1. The seven abandoned claims are as follows:
 1. The state failed to give petitioner notice of the aggravating circumstances it intended to rely on at the penalty phase of the trial.
 2. Death by electrocution is cruel and unusual punishment.
 3. The three judge sentencing panel procedure in Nebraska is unconstitutional.
 4. The death penalty in Nebraska is administered in a geographically biased manner.

 5. Ineffective assistance of trial counsel.
 6. Petitioner's right to due process of law and a fair trial were violated by the prosecution's use of gruesome and inflammatory photographs.
 7. Aggravating circumstance § 29–2523(1)(a) is unconstitutionally vague.

petitioner's case, denied petitioner a fair trial and due process of law.

5. Petitioner's conviction was based on an illegally obtained confession.

6. The prosecution violated petitioner's constitutional right to discovery of exculpatory and/or mitigating evidence by withholding certain relevant and favorable evidence relating to petitioner's insanity defense.

## EXHAUSTION AND WAIVER

Several of petitioner's claims were not raised on direct appeal, although they could have been, but were raised in petitioner's first post-conviction action. On appeal of that first post-conviction judgement, the Nebraska Supreme Court noted that all of the 33 claims raised in the action could have been raised on direct appeal but were not. *State v. Williams*, 217 Neb. 539, 540, 352 N.W.2d 538 (1984). However, the court then went on to examine several of the claims on the merits, which include the first five claims that petitioner has now raised in this action. In light of the recent decision of the U.S. Supreme Court in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), absent a "plain statement" from the Nebraska Supreme Court that its determination is based on a state procedural bar, which is not present in this case, such claims are not barred from review in a federal habeas action.

## JURY DETERMINATION OF EXISTENCE OF AGGRAVATING CIRCUMSTANCES

In his first claim petitioner contends that the Nebraska death sentencing statutes violate the Fifth, Sixth, Eighth, and Fourteenth Amendments by failing to provide for a jury trial on the existence of aggravating circumstances, which he contends are "elements of the capital offense." Petitioner's Second Brief at 18. The petitioner concedes that this claim has previously been rejected by

this court on numerous occasions. See *Harper v. Grammer*, 654 F.Supp. 515, 533–34; *Otey v. Black*,[2] CV82–L–665 (D.Neb.) report and recommendation dated February 3, 1987 at pp. 36–37, *adopted*, unpublished memorandum of decision dated April 7, 1987 (Urbom, J.) at 1; *Holtan v. Black*, CV84–L–393 (D.Neb.) report and recommendation dated June 25, 1986 at pp. 17–18, *adopted*, unpublished memorandum of decision dated November 5, 1986 (Urbom, J.) at p. 10, 1986 WL 12479; *Moore v. Clarke*, CV84–L–754 (D.Neb.) report and recommendation dated May 23, 1988 at pp. 29–30, *adopted*, unpublished memorandum of decision dated September 20, 1988 (Urbom, J.). *Cf. Cabana v. Bullock*, 474 U.S. 376, 384–88, 106 S.Ct. 689, 696–98, 88 L.Ed.2d 704 (1986) (requisite factual finding under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)—that defendant killed, attempted to kill, or intended that a killing take place—need not be made by the jury, but may instead be made by a judge, either at the trial, or possibly the appellate level).

In *Harper v. Grammer, supra,* Judge Urbom adopted the following language from the undersigned Magistrate's recommendation as a proper statement of the law:

> The identical argument for jury input on aggravating factors has been rejected by the Ninth Circuit Court of Appeals based on the facts of *Spaziano [v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)]. Although the issue was not explicitly addressed in *Spaziano*, a judge, not a jury, in that case determined the existence of aggravating and mitigating factors underlying the sentence. *Adamson v. Ricketts*, 758 F.2d 441 (9th Cir.1985). In *Roach v. Martin*, 757 F.2d 1463 (4th Cir.), *cert. denied* [474 U.S. 1039] 106 S.Ct. 645 [88 L.Ed.2d 637] (1985), the court found constitutionally adequate a capital sentencing statute under which the judge found the existence of aggravating circumstances in sentencing after a plea, even though a

**2.** Throughout this memorandum I cite unreported decisions of this court in previously-decided death penalty cases as a means to refer the reader to historical actions of the court and the reasoning therein. In keeping with the rule in

this circuit that such opinions are not binding as precedent, these opinions are not referred to as such; rather, this means serves to adopt the reasoning of those decisions without setting forth at length the entire passages or discussions.

jury performed that sentencing task upon conviction after trial.

Aggravating factors in the capital sentencing scheme are not elements of a death-deserving or "capital" crime. *Adamson v. Ricketts, supra.* By arguing that the aggravating factors are elements of a more serious, separate crime, the petitioner seeks to equate the capital sentencing proceeding with a trial on guilt or innocence and would demand the same safeguards, including a trial by jury. While it is certainly true that a capital sentencing procedure is deliberately unique from other sentencings, *Lockett v. Ohio,* 438 U.S. 586, 605 [98 S.Ct. 2954, 2965, 57 L.Ed.2d 973] (1978), and must, unlike other sentencing schemes, be designed with safeguards to insure measured, consistent application and fairness to the accused, *Furman v. Georgia,* 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972), it does not follow that such proceedings require the constitutional protections identical to those provided criminal defendants at trial. See, *Gardner v. Florida,* 430 U.S. 349 [97 S.Ct. 1197, 51 L.Ed.2d 393] (1977). There is no Sixth Amendment to jury sentencing even where the sentence turns on specific findings of fact. See, *McMillan v. Pennsylvania,* 477 U.S. 79, [93, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67] (1986). This claim is without merit and should be denied.

654 F.Supp. at 533–34.

As pointed out by the petitioner, the citations to *Adamson v. Ricketts,* 758 F.2d 441 (1985) in the above cited language are no longer an accurate reflection of the law in the Ninth Circuit in light of the recent decision in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988) (en banc), *reh'g denied,* Feb. 1, 1989, *pet. for cert. den.,* 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795. In that case the Ninth Circuit, sitting en banc, held that Arizona's statutory death penalty scheme, which requires a sentencing judge to find at least one aggravating circumstance before a defendant convicted of first degree murder may be considered death-eligible, "impermissibly identifie[s] elements of the crime of capital murder as sentencing factors for determination by a judge, thereby removing

their consideration from a jury, in violation of the Sixth Amendment." *Id.* at 1029.

The petitioner in *Adamson* argued that Arizona's death penalty statute effectively operated to create a "higher degree of murder—capital murder," which is an offense separate and distinct from the four categories of murder which are formally and explicitly set forth in the Arizona statutes, those being first degree murder, A.R.S. § 13–1105; second degree murder, A.R.S. § 13–1104; manslaughter, A.R.S. § 13–1103; and negligent homicide, A.R.S. § 13–1102. According to petitioner's argument, his death sentence was imposed only after he was found guilty of that higher degree of murder "by virtue of the judge finding two additional factors, specifically, aggravating circumstances A.R.S. §§ 13–703(F)(5) (a motive of "pecuniary gain") ("(F)(5)"), and 13–703(F)(6) (murder committed in an "especially heinous, cruel or depraved" manner) ("(F)(6)").

In analyzing the petitioner's argument the Ninth Circuit noted:

> The logic of Adamson's argument, however, is sound only if the Arizona statutory aggravating circumstances are actually elements of a distinct crime.

*Adamson,* 865 F.2d at 1024. The court began by noting that in accordance with the dictates of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), states are required to prove beyond a reasonable doubt *all elements of the offense* with which a defendant is charged. Further, the court pointed out that "the parameters of what constitutes an 'element' ... remain elusive." *Id.* In determining whether Arizona's statutory aggravating circumstances were "elements" of a distinct offense, the court examined the following:

> (1) the legislative history of Arizona's death penalty statutes; (2) the actual role played by aggravating circumstances under Arizona's revised statute § 13–703; and (3) the application of *McMillan v. Pennsylvania,* [477 U.S. 79 [106 S.Ct. 2411, 91 L.Ed.2d 67] (1986) ], the Supreme Court's most recent pronouncement on the

distinction between elements and sentencing factors, to this case.

*Id.*

In analyzing Arizona's legislative history of its death penalty statute, the court noted that prior to 1973 it was the function of the jury to determine whether a defendant would receive "death or life imprisonment." That decision, according to the court, was made *at trial* wherein the state " . . . allocated the burden of proof of the elements of the homicide—including the burden of proving mitigation—between the prosecution and defendant. . . ." In other words, in Arizona prior to 1973, the jury determined the *degree* of murder based on evidence of mitigation, or lack thereof. Thus, the Ninth Circuit concluded that these mitigating factors could be viewed as one of the "elements" necessary to establish a specific degree of murder. *Id.* at 1024–25, n. 23.

The court went on to note, however, that Arizona's pre–1973 practices were not dispositive of Adamson's claim. The question remained as to whether Arizona's revised death penalty statutes deprived the petitioner of his Sixth Amendment right to have a jury determine all the "elements" of the charged offense. According to the court, Arizona's revised statute indeed created the distinct offense of "capital murder." The court stated:

> Under Arizona's revised code, all murder is not capital murder. * * * While Arizona has formally subdivided murder into at least four categories . . . it appears that aggravating circumstances in fact operate to create an additional category of murder. While the statute's nomenclature ("aggravating circumstances") suggests that they are mere factors guiding the judge in his or her determination of the appropriate penalty, all other indicators confirm that aggravating circumstances are additional *elements* necessary for a finding that a defendant is guilty of the distinctive offense of *capital* murder. * * *
>
> An aggravating "circumstance" which elevates a murder to a "death-eligible" murder in the penalty phase, remarkably mirrors the attributes of an essential element of the offense during the guilt phase of a

trial. Like an element of a crime, an aggravating circumstance in the Arizona scheme informs the prosecutor what facts must be proven to obtain a conviction. The circumstance must be proven beyond a reasonable doubt. The hearing is adversarial, with oral argument and the prosecution's presentation of evidence governed by the usual rules of evidence. The presiding trial judge must make findings on the existence or nonexistence of each of the statutory aggravating and mitigating circumstances. If the judge finds an aggravating circumstance, the burden then shifts to the defendant who must put on sufficient evidence of mitigation or the death penalty will be imposed. (Citation omitted). If the prosecution is unable to prove the existence of a single aggravating circumstance, like not proving an essential element, the defendant cannot be put to death.

*Id.* at 1026–27. (Emphasis in original). Based on this examination of the revised death penalty statute, the Ninth Circuit held that Arizona's "aggravating circumstances function as elements of the crime of capital murder requiring a jury's determination."

Finally, the court stated that the Supreme Court's opinion in *McMillan, supra,* its most recent pronouncement on what constitutes an "element" of an offense, added support to its holding in *Adamson.* After distinguishing the facts of the two cases, the Ninth Circuit concluded that the facts present in Adamson's case required a result different from that reached in *McMillan.* The most significant distinction could be found in the Supreme Court's statement that if the factor alleged to have been an "element" of an offense in *McMillan* had exposed a defendant to "greater or additional punishment," *McMillan,* 477 U.S. at 88, 106 S.Ct. at 2417 the result could have been different. According to the *Adamson* court, that is precisely what Arizona's "aggravating circumstance" scheme accomplishes. The Ninth Circuit found that although first degree murder in Arizona is punishable by either death or life imprisonment, in the absence of a finding of at least one aggravating circumstance, the death penalty cannot be imposed. Therefore, the finding of that aggravating

circumstance "exposes [defendants] to greater or additional punishment." *Adamson*, 865 F.2d at 1028, *citing, McMillan*, 477 U.S. at 88, 106 S.Ct. at 2417.

For the reasons which follow, I conclude that the *Adamson* decision should not alter this court's past course relating to this issue. Despite any similarities that may exist between the death penalty schemes in Nebraska and Arizona, I respectfully disagree with the Ninth Circuit's conclusion that the statutory aggravating circumstances are, in reality, "elements" of an unwritten offense known as "capital murder" and are merely masquerading as sentencing factors. Most importantly I do not agree with majority's analysis in which it distinguishes the *McMillan* decision on its facts. The Ninth Circuit distinguished *McMillan* in two ways; first, it concluded that Arizona's revised statutory death penalty scheme "in essence *withdrew* from the definition of its homicide crimes various 'elements' traditionally preserved in Arizona for jury determination ..." while in *McMillan*, "Pennsylvania had defined the elements of the enumerated offenses, as well as their maximum allowable sentences, at least ten years prior to passing the statute at issue." Second, as noted above, the *Adamson* majority concluded that the Arizona statutory

scheme actually subjected defendants to "greater or additional punishment," a factor which *could* have changed the result in *McMillan*. *Adamson*, 865 F.2d at 1027.

I would first point out that Nebraska's statutory scheme never included a "statute allocating the burden of proving mitigation at trial" such as that repealed by the Arizona legislature in 1973 and referred to by the *Adamson* majority as evidence that Arizona had in fact altered the "elements" of its homicide crimes.[3] Even if I were to agree with the majority's assessment of that Arizona statute and the import accorded its repeal, the fact that it served to distinguish the *Adamson* case from the *McMillan* case is of no importance in the case before this court. Nebraska's first degree murder statute, the elements necessary to establish that offense, and the possible penalty have remained virtually unchanged since 1893.[4] Therefore that distinguishing feature found in the *Adamson* case is not present in this case.

More importantly, however, I cannot agree with the Ninth Circuit that the finding of aggravating circumstances subjects defendants to "greater or additional punishment." The majority states:

**3.** The repealed statute with which the majority was concerned stated as follows:

> Upon trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.

Arizona Penal Code of 1901 § 938; A.R.S. of 1913, 13 Penal Code § 1446; Revised Code of Arizona of 1928 § 5050; Arizona Code of 1939 § 44–1814; A.R.S. of 1955 § 13–454; A.R.S. of 1956 § 13–454.

*Adamson*, 865 F.2d at 1024.

**4.** Neb.Rev.Stat. § 28–401 (Reissue of 1964) stated as follows:

> Whoever shall purposely and of deliberate and premeditated malice or in the perpetration of or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another; or whoever by willful and corrupt perjury or subornation of the same, shall purposely procure the conviction and execution of any inno-

cent person, every person so offending shall be deemed guilty of murder in the first degree and upon conviction thereof shall, suffer death or shall be imprisoned ... during life.

G.S. p. 720; Laws 1983, c. 44, § 1, p. 385; R.S.1913, § 8581; C.S.1922, § 9544; C.S. 1929, § 28–401; R.S.1943, § 28–401; Laws 1963, c. 147, § 1, p. 529.

The current Nebraska statute defining first degree murder, Neb.Rev.Stat. § 28–303 (Reissue 1985), states as follows:

> A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary, or (3) by administering poison or causing the same to be done; or if by willful or corrupt perjury or subornation of the same he purposely procures the conviction and execution of any innocent person.

The punishment for first degree murder, as either a Class I or Class IA felony, continues to be either life imprisonment or the death penalty. Neb.Rev.Stat. § 28–105 (Reissue 1985).

The [*McMillan*] Court placed great emphasis on the fact that the Pennsylvania statute

> *neither alters the maximum penalty for the crime committed* nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty *within the range already available to it* without the special finding of visible possession of a firearm.

(Citation omitted).

The *Adamson* majority then goes on to conclude that the above quoted language from *McMillan* is not applicable to the Arizona statutory scheme of finding aggravating circumstances. I do not agree. The language quoted above from *McMillan* is equally accurate if applied to a statutory death penalty scheme such as that in Nebraska. The finding of a statutory aggravating circumstance does not alter the maximum penalty for first degree murder nor does it create a "separate offense calling for a separate penalty." It does serve to limit the discretion of the sentencing court "in selecting a penalty within the range already available to it." The maximum punishment upon conviction for first degree murder is death. As noted by the dissent in *Adamson*, "the method of establishing that maximum punishment (Citation omitted) does not alter the maximum penalty nor create a separate crime calling for a separate penalty." 865 F.2d at 1054. (Brunetti, J., dissenting). The majority in *Adamson* appears to me to have introduced a strained interpretation of what constitutes an "element" of an offense, an interpretation which, I believe, is not consistent with the Supreme Court's analysis in *McMillan.*

The State of Arizona has filed a petition for certiorari in the *Adamson* case in the U.S. Supreme Court. *See, Lewis v. Adamson,* 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795. In the absence of guidance from either the Supreme Court or the Eighth Circuit, I decline petitioner's invitation to adopt the *Adamson* opinion.

## USE OF PRE–SENTENCE REPORT AT SENTENCING HEARING

The petitioner asserts that the use of a pre-sentence investigation report at his sentencing hearing violated his right to confront witnesses, right to be represented by counsel and right against self-incrimination as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. Specifically, petitioner objects to that portion of the pre-sentence report which related to an alleged sexual assault of his former wife, Merilee Williams, which occurred only a few days prior to the murders of Catherine Brooks and Patricia McGarry. Petitioner alleges that he was denied his right to cross-examine Ms. Williams with regard to the assault and that the evidence relating to the assault in the pre-sentence report was "simple hearsay." That portion of the report was allegedly used, in part, to establish the existence of the second prong of aggravating circumstance § 29–2523(1)(a).[5] For the reasons which follow I conclude that the petitioner's claim must fail.

Petitioner's claim that the Nebraska death penalty statute violates the defendant's right to confront witnesses has been previously rejected by this court on several occasions. *Otey v. Black,* CV82–L–665 (D.Neb.) report and recommendation dated February 3, 1987 at pp. 38–40, *adopted,* (unpublished memorandum of decision dated April 7, 1987) (Urbom, J.) at p. 1; see also *Harper v. Grammer,* 654 F.Supp. 515, 535–36 (D.Neb.1987) and supplementary memorandum of decision dated December 15, 1987 (Urbom, J.) at pp. 3–4; *Moore v. Clarke,* CV84–L–754 (D.Neb.) report and recommendation dated May 23, 1988 at pp. 10–13, *adopted,* unpublished memorandum of decision dated September 20, 1988 (Urbom, J.).

Despite the absence of any authority cited to support the petitioner's claim, I shall review the case law applicable to this issue. The Sixth Amendment right to confront and cross-examine witnesses is not absolute even in a criminal trial, a context in which the right is clearly applicable. *See, e.g., United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121,

---

**5.** Neb.Rev.Stat. § 29–2523(1)(a) states as follows: The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity.

89 L.Ed.2d 390 (1986); *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1986). In addition, and of particular significance, the United States Supreme Court has never held the right to confront and cross-examine adverse witnesses applicable to sentencing proceedings. In fact, in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, *reh'g denied,* 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760 and 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed. 514 (1949), the Court expressly declined to extend the confrontation and cross-examination guarantees to capital sentencing proceedings. See also *Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516, *reh'g denied,* 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763 (1959).

In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1976) the Supreme Court reversed and remanded a death sentence that was based in part upon information contained in a confidential presentence report that was not disclosed to either of the parties. That decision, however, was not based on the confrontation clause. Instead, the Court merely held it to be a violation of due process to impose the death penalty on the basis of information which the defendant had no opportunity to explain or deny. This was done to ensure that the defendant's due process right to be sentenced on the basis of accurate information was satisfied. See *Gardner,* 430 U.S. at 356, 97 S.Ct. at 1203; *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). As the Court noted in *Gardner,* "The fact that due process applies does not, of course, implicate the entire panoply of criminal trial procedural rights." 430 U.S. at 358 n. 9, 97 S.Ct. at 1205 n. 9.

However, the Eleventh Circuit has determined that the holding of *Williams v. New York, supra,* should be re-examined in light of the "substantial revolution" of the constitutional requirements governing capital sentencing proceedings since *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Proffitt v. Wainwright,* 685 F.2d 1227, 1252 (11th Cir.1982), *modified on reh'g,* 706 F.2d 311 (11th Cir.1983), *cert. denied,* 464 U.S. 1002, 1003, 104 S.Ct. 508–509, 78 L.Ed.2d 697 (1983). In *Proffitt* the Eleventh Circuit held that "the right to cross-examine adverse witnesses applies to capital sentencing hearings," 685 F.2d at 1254, but this holding was later expressly limited to the facts of the case, involving a damaging presentence psychiatric report about the defendant. *Proffitt,* 706 F.2d at 312.[6] Such a limitation is appropriate. When expert witnesses provide information in the form of opinions, "cross-examination is necessary not only to test the witness's knowledge and competence in the field ... but also to elicit the facts on which he relied in forming his opinions." *Proffitt,* 685 F.2d at 1254. In the case of such expert opinions, cross-examination is perhaps the only way in which the reliability and accuracy of the opinions can be effectively tested. *See id.* at 1255.

At the outset I note that neither party in this action submitted, as part of the state court records, the presentence report at issue herein, nor has there been filed a motion to expand the record by the addition of that report. However, given the narrow basis upon which the petitioner challenges the sentencing hearing, I conclude that the presentence report is not vital to the disposition of this claim.

First, it is apparent from the state court records which are on file that petitioner has never raised in state court the specific issue which is before this court in this habeas action; thus, it could be deemed waived. However, petitioner did raise broad, general objections to the use of the presentence report by the sentencing panel in his first postconviction action and on appeal to the Nebraska Supreme Court from that judgment. (Ex. 7, pp. 5–6, ¶¶ 10–12, 25, 27, 33, and 34; Ex. 10, p. 1, ¶ 2; Ex. 23, pp. 24–28). There

---

**6.** As yet, there has been no extension of *Proffitt* beyond its narrow confines, concerning a damaging psychiatric report. *But cf. Moore v. Kemp,* 824 F.2d 847, 854 (11th Cir.1987) (en banc) (reversing a finding that petitioner's *Proffitt* claim was an abuse of the writ and remanding the claim for a determination on the merits where petitioner simply challenged the lack of cross-examination of "witnesses whose hearsay testimony was considered in the presentence report").

fore, giving the petitioner the benefit of any doubt, I address the claim on its merits.

 As noted above, the Supreme Court has never held that the right to confront and cross-examine witnesses is applicable at sentencing proceedings. *Williams v. New York, supra.* At most, the Due Process Clause requires only that a defendant have access to a presentence report and an opportunity to rebut, by explanation or denial, any inaccurate information in the report. *Gardner, supra.* In addition it is clear that Williams' case does not fall within the limited holding of *Proffitt.* Unlike *Proffitt,* petitioner is not complaining of an inability to cross-examine a psychiatrist responsible for a damaging presentence psychiatric report.

"Due process does not require reconsideration of a sentencing decision 'where the defendant is given a full and fair opportunity to reveal the inaccuracies in the information relied upon by the sentencing court and fails to do so.'" *United States v. Manko,* 772 F.2d 481, 482 (8th Cir.1985) (quoting *United States v. Brown,* 715 F.2d 387, 389 (8th Cir. 1983)). Petitioner has not demonstrated how the sentencing hearing failed to provide him with a full and fair opportunity to rebut the information relied upon by the sentencing panel. Indeed, from the state court records it is clear that the pre-sentence report had been reviewed by petitioner's counsel prior to sentencing (BE 4055:2–7) and counsel made an objection to any use of the report by the sentencing panel, as well as objections to specific portions of the report. (BE 4009:21–

25, 4010:1–11). The petitioner does not argue that he and his counsel were denied adequate access to the report. Nor is there any showing that any information relied upon by the sentencing panel was false, and could have been shown to be false with the help of the cross-examination of witnesses. There is no allegation or indication that petitioner could not have successfully rebutted the statements objected to, if they were in fact falsely made, without the presence of the witness.

 Finally, as noted earlier, the petitioner alleges that he was prejudiced by the use of that portion of the presentence report relating to Merilee Williams because it was relied upon by the sentencing panel in finding the existence of the second prong of aggravating circumstance (1)(a), "substantial history of serious assaultive or terrorizing criminal activity." (BE 4060:24–25, 4061:1–4).[7] However, even if I accept petitioner's argument and find that the sentencing panel relied on improper evidence in the presentence report to find the second prong of aggravating circumstance (1)(a), this would not result in a recommendation for relief based on an unconstitutional application of aggravating factor (1)(a). There are two prongs to (1)(a), either of which may be found, resulting in a finding that the aggravating circumstance exists beyond a reasonable doubt. In discussing aggravating factor (1)(a), the Nebraska Supreme Court has stated:

7. The sentencing panel specifically found:
 [T]hat the defendant has a substantial history of serious assaultive criminal activity which was particularly evidenced on August 5, 1977, less than a week prior to the commission of the crimes charged in this case. (BE 4060: 24–25, 4061: 1–2).
 Again I would note that I do not have the presentence report and cannot ·establish from that document the significance or meaning of the August 5, 1977 date referred to by the panel. However, other portions of the state court records which are before this court verify that this date relates to an alleged "kidnapping and sexual assault" by Williams of his former wife, Merilee. In Williams second appeal of his second state post-conviction action, *State v. Williams,* 224 Neb. 114, 396 N.W.2d 114 (1986), the Nebraska Supreme Court set forth the following facts:

> In the spring of 1977 Merilee petitioned for dissolution of her marriage with Williams. A decree of dissolution was entered on August 3, 1977. On the morning of August 5 Williams "kidnapped" Merilee in her employer's parking lot and drove her to a Lincoln park, where, after slashing Merilee's forehead with a knife and threatening to "ram" the knife in her ear, Williams "raped" Merilee. Later, on August 5, Williams took Merilee to a hospital emergency room for treatment of knife wounds which she had sustained during the sexual assault in the park. Police were summoned and took Williams into custody. Williams was released on August 10. The murders of McGarry and Brooks occurred on August 11. *Id.* at 118, 396 N.W.2d 114.

[T]here are two aspects to aggravating circumstance (1)(a), one of which may be proved by establishing prior convictions for "another murder or crime involving the use or threat of violence to the person" and the other of which may be proved by showing that the offender "has a substantial history of serious assaultive or terrorizing criminal activity," irrespective of whether the offender was convicted for the conduct creating the history.

*State v. Birdhead,* 225 Neb. 822, 836, 408 N.W.2d 309 (1987).

In petitioner's case, the sentencing panel found that the first prong of (1)(a) existed based on the fact that "the defendant was convicted of the felony offense of robbery in the third degree which involved a threat of violence to the victim, and the defendant was thereafter sentenced to an indeterminate sentence not to exceed five years at the Elmira State Reformatory in New York on September 22, 1964." (BE 4060:18–24). The petitioner has not challenged the factual foundation relied upon by the court in finding the existence of the first aspect of (1)(a); in fact, there is no objection in any form as to the finding of the first prong of that aggravating circumstance. Thus, even if I were to conclude that the panel improperly found the second prong of that circumstance, it would not negate the existence of (1)(a) in its entirety.

Therefore, for all the reasons set forth above, I conclude that this claim must fail.

## VAGUENESS OF AGGRAVATING FACTOR 29–2523(1)(d)

The petitioner challenges the constitutionality of aggravating circumstance (1)(d), alleging that it is vague and therefore facially unconstitutional.

*Aggravating circumstance (1)(d) is as follows:*

The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence.

Neb.Rev.Stat. § 29–2523(1)(d).

At the time of Williams' appeal the first prong of aggravating circumstance (1)(d), "especially heinous, atrocious, or cruel," was construed as applying to the "conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Simants,* 197 Neb. 549, 566, 250 N.W.2d 881 (1977). In addition, the court in *State v. Rust,* 197 Neb. 528, 250 N.W.2d 867 (1977), adopted the sentencing panel's interpretation of this factor:

We recognize that all first degree murder crimes are capable of being accurately characterized by one or more of the descriptive adjectives employed, but by the use of the words 'especially' and 'exceptional' the legislature has required a much greater degree of these characteristics than is usually present in a murder. This category of aggravating circumstances would include murders involving torture, sadism, sexual abuse, or the imposition of extreme suffering....

*Id.* at 538, 250 N.W.2d 867.

The second prong of (1)(d), the "exceptional depravity" prong, was described by this court in *Holtan* as follows:

The second prong applies to the state of mind of the actor. It applies where circumstances demonstrate exceptional depravity—that is, where it offends all standards of morality and intelligence or was senselessly bereft of any regard for human life or "so coldly calculated" as to be "senselessly bereft" of any regard for human life. (Citations omitted).

*Holtan, supra* at 25.[8]

In Williams' case the sentencing panel made the following findings of fact as to aggravating circumstance (1)(d):

[T]his court has adopted a limiting construction on aggravating circumstance 1(d), as shown in cases extending from 1977 to 1986. We have held that "especially heinous, atrocious, or cruel" is limited to cases where "torture, sadism, or the imposition of extreme suffering exists," *State v. Moore,* [210 Neb. 457] at 470, 316 N.W.2d [33] at 41 [ (1982) ], or where

---

**8.** The Nebraska Supreme Court's most recent discussion of aggravating circumstance (1)(d) indicates that its construction of the first prong has remained largely unchanged while, on the other hand, the limiting construction applied to the second prong has been redefined over time. The court's most recent pronouncement states:

The evidence establishes beyond a reasonable doubt that both murders in Count I and Count II of the Information were especially heinous, atrocious, cruel and manifested exceptional depravity by ordinary standards of morality and intelligence. The defendant killed both said victims who were defenseless and unresisting; that the commission of both said murders by the defendant was totally and bereft of any regard for human life. The evidence further establishes that the victim Catherine M. Brooks was sexually abused by the defendant.

This aggravating circumstance does exist as to both Counts I and II of the Information.

(BE 4062:4–18; Filing 22, Ex.2, Williams trial transcript, "Order of Sentence and Commitment" at 5).

Petitioner's vagueness challenge has been examined by this court on several occasions. See *Harper v. Grammer*, 654 F.Supp. 515, 538–40; *Otey v. Black*, CV82–L–665 (D.Neb.) report and recommendation dated February 3, 1987 at pp. 42–44, *adopted*, unpublished memorandum of decision dated April 7, 1987 (Urbom, J.). *Holtan v. Black*, CV84–L–393 (D.Neb.) report and recommendation dated June 25, 1986 at pp. 24–29, *adopted*, unpublished memorandum of decision dated November 5, 1986 (Urbom, J.) at p. 22–26; *Moore v. Clarke*, CV84–L–754 (D.Neb.) report and recommendation dated May 23, 1988 at pp. 40–43, *adopted*, unpublished memorandum of decision dated September 20, 1988 (Urbom, J.). As the petitioner correctly points out, in *Holtan v. Black, supra*, this court found aggravating circumstance (1)(d) to be facially unconstitutional. That

determination was based on the conclusion that the second prong of (1)(d) failed to provide a sentencing panel with " 'clear and objective standards' for 'specific and detailed guidance' and that make 'rationally reviewable the process for imposing a sentence of death.' " *Holtan, supra*, at 25. (*quoting, Godfrey v. Georgia*, 446 U.S. 420, 427–28, 100 S.Ct. 1759, 64 L.Ed.2d 398). Although this portion of the opinion was subsequently vacated by the Eighth Circuit as unnecessary to the disposition of the case, 838 F.2d 984 at 986 & n. 3, I concluded in *Moore v. Clarke, supra*, and reiterate here, that it nonetheless remains persuasive.

The petitioner also raises a vagueness challenge to the first prong of circumstance (1)(d). This court has consistently held that the first prong of (1)(d) passes constitutional muster. *Holtan, supra* unpublished memorandum of decision at 25. *Harper*, 654 F.Supp. at 538–40; *Otey, supra* at 43–44. The petitioner has offered no new argument which might persuade this court to alter its previous position on this issue.

As this court held in *Harper* and *Otey*, when a sentencing panel finds beyond a reasonable doubt that both prongs of aggravating factor (1)(d) exist, "the unconstitutional vagueness of the second prong does not diminish the virility of the first prong." *Harper, supra*, unpublished memorandum of decision at 31. "[A]ggravating circumstance (d) contains two separate prongs which may operate in conjunction with or independent of one another to establish the existence of the factor." *Holtan*, CV84–L–393, unpublished memorandum of decision dated November 5, 1986 (Urbom, J.) at p. 24. In Williams' case,

the murder was preceded by acts "performed for the satisfaction of inflicting either mental or physical pain or that pain existed for any prolonged period of time," *State v. Hunt*, [220 Neb. 707] at 725, 371 N.W.2d [708] at 721 [(1985)].

Similarly we have sharply limited the circumstance of "exceptional depravity" sufficient to constitute an aggravating circumstance to circumstances showing relishing of the murder by the killer, infliction of gratuitous violence on the victim, needless mutilation of the victim, senselessness of the crime, or helplessness of

the victim. *State v. Joubert*, [224 Neb. 411, 399 N.W.2d 237 (1986)].

*State v. Ryan*, 233 Neb. 74, 142, 444 N.W.2d 610 (1989). As noted by Judge Urbom in the *Moore* case, "[t]he 1986 definition of the second prong of aggravating factor (d) looks nothing like the pre–1986 illustrations." *Moore, supra*, at 4. While there is still a question as to whether this new construction of the second prong of (1)(d) is constitutionally adequate, *see State v. Palmer*, 224 Neb. 282 at 334–44, 399 N.W.2d 706 (Krivosha, C.J., dissenting); *Moore v. Clarke*, CV84–L–754, unpublished memorandum of decision (Urbom, J.), that issue need not be decided at this time.

as noted above, the panel concluded that "both murders ... were especially heinous, atrocious, cruel *and* manifested exceptional depravity...." (emphasis added). From that language one could infer that both prongs of (1)(d) were found to exist as to both murders. However, the findings of fact set forth by the panel do not support such an inference.

The sentencing panel in Williams' case made only three specific factual findings, one of which applied to only one victim, which could be said to support the criteria necessary for a finding of the existence of (1)(d). The panel found that the victims were "defenseless" and that they were "unresisting." Further, the panel found that the petitioner had "sexually abused" Catherine Brooks. Based on these three findings from the evidence, the panel's conclusion amounted to a finding that both prongs of circumstance (1)(d) existed as to both victims. Williams' sentencing panel made no distinction between the two prongs of (1)(d), a failure which is understandable given that the Nebraska Supreme Court had not, at that time, clearly distinguished between them.[9]

Two of the three factual findings of the sentencing panel, "defenseless and unresisting," have traditionally been used by the Nebraska state courts to support the existence of the "exceptional depravity" prong of (1)(d), the prong which this court has found to be unconstitutional. Indeed, this case is somewhat analogous to the *Holtan* case in that in *Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977) (direct appeal), while the sentencing panel found that the murder was "especially heinous, atrocious, cruel, and manifested exceptional depravity ...," the Nebraska Supreme Court relied exclusively on the second prong of (1)(d) to uphold the existence of that circumstance when it stated:

> Although torture was not involved, it is clear that this element was applicable. The defendant killed, and attempted to kill, *unresisting* victims of the robbery. The act was totally and senselessly bereft of any regard for human life.

*Id.* at 547, 250 N.W.2d 876. Again in *State v. Peery*, 199 Neb. 656, 261 N.W.2d 95 (1977), the Nebraska Supreme Court upheld the existence of 1(d) based on the second prong when it found:

> [T]he defendant fired the shots when the victim was thoroughly and effectively bound, both wrists tied tightly behind her, and her ankles tightly tied; she was *not offering any resistance,* posed no threat to the defendant, and was totally *helpless.*

*Id.* at 675, 261 N.W.2d 95. (Emphasis added). In addition, the Nebraska Supreme Court's post 1986 construction of the second prong of (1)(d), as set forth in *State v. Palmer*, 224 Neb. 282, 319–20, 399 N.W.2d 706 (1986), confirmed that "helplessness" of the victim is but one circumstance that may be found which would support a finding that the second prong of (1)(d) exists. Thus, case law both before and after Williams' appeal establishes that a finding that murder victims were defenseless, unresisting or helpless went to support a conclusion that the second prong of (1)(d) existed.

As with the "defenseless and unresisting" findings of fact, the sentencing panel did not delineate whether the finding of "sexual abuse" of Catherine Brooks was intended to support the "especially heinous" or the "exceptional depravity" prong of (1)(d). As a general rule Nebraska case law states that if a sexual assault occurs before death, that factor will be considered in establishing the existence of the first prong of (1)(d). *See, State v. Rust*, 197 Neb. 528, 538, 250 N.W.2d 867 (1977) (Court adopts language of sentencing panel that "[t]his category of aggravating circumstances would include murders involving torture, sadism, *sexual abuse,* or the imposition of extreme suffering.") (emphasis added); *see also, State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1982). Arguably in the pre-*Williams* cases involving sexual assaults occurring before death, it is difficult to determine whether the assault was evidence supporting the first or the second prong of (1)(d) because, as noted above, the state courts had not clearly distinguished the

---

9. It was not until 1982, in *State v. Moore, supra,* that the Nebraska Supreme Court confirmed that aggravating circumstance (1)(d) contained two separate prongs which may operate in conjunction with or independent of one another to establish the existence of the circumstance.

two prongs at that time. In *Rust*, however, the "sexual abuse" language was set forth in conjunction with the "torture" and "extreme suffering" language which was and still is determinative of the "especially heinous" prong of (1)(d). *State v. Rust*, 197 Neb. at 538, 250 N.W.2d 867.

On the other hand, in *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), the Nebraska Supreme Court held that a sexual attack on a victim's body *after* death was sufficient to establish the constitutionally invalid "exceptional depravity" prong of (1)(d). *See also, State v. Peery*, 199 Neb. 656, 675, 261 N.W.2d 95 (1977). Thus, if the evidence in petitioner's case indicated that the assault occurred after Brooks death, the panel may have intended the assault as evidence supporting the second prong of (1)(d).

The record is not particularly clear on the question of when Ms. Brooks was assaulted in relation to her death.[10] Even if it were, it is not the province of this court on habeas review to make such findings of fact. *See, Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1985) (Federal court in habeas action must "take steps to require the State's own judicial system to make ... factual findings" regarding the *Enmund [v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)]* criteria, i.e., whether the defendant killed, attempted to kill, or intended to kill). As the United States Supreme Court stated in *Cabana:*

> [T]o the extent that *Enmund* recognizes that a defendant has a right not to face the death penalty absent a particular factual predicate, it also implies that the State's judicial process leading to the imposition of the death penalty must at *some* point provide for a finding of that factual predicate.

474 U.S. at 390–91, 106 S.Ct. at 699. (Emphasis in original). However, it would not be overreaching for this court to presume that the panel's finding that Ms. Brooks was "sexually abused" was based on the jury's determination that the petitioner was guilty of the sexual assault of Catherine Brooks. It would appear to be beyond argument that Nebraska's sexual assault statute, Neb.Rev.Stat. § 28–319, contemplates a living victim. For that reason I conclude that the sentencing panel utilized the finding of the "sexual abuse" of Ms. Brooks to establish the existence of the "especially heinous" prong of (1)(d). Thus, the panel's finding of the existence of (1)(d) was based in part on a constitutionally adequate construction of that circumstance, i.e., the "especially heinous" prong.

The only findings of fact as to the existence of (1)(d) in the case of victim Patricia McGarry is that she was "defenseless and unresisting," findings which indicate, in accordance with the above, that the panel relied exclusively upon the constitutionally invalid second prong of (1)(d). There are no findings of fact set forth by the sentencing panel that would support its conclusion that the "especially heinous" prong of (1)(d) exists as to the murder of McGarry. The finding of this circumstance, therefore, rests entirely upon the second prong of the circumstance. For this reason, disposition of this case regarding imposition of the death penalty in the McGarry murder must await a decision of the Court of Appeals on the constitutionality of the second prong.

Petitioner also asserts that aggravating circumstance (1)(d) is unconstitutional as applied in his case.[11] Even if a statute is found constitutional based on its language and construction, it nevertheless may be unconstitutional if inappropriately applied to the person challenging it. In such a challenge the determination is whether, in light of the circumstances of the murders, the state court has properly applied its constitutional con-

---

10. The record indicates that lab tests showed the presence of spermatozoa in the victim's vagina and rectal area, which, according to the pathologist's testimony, at least that found in the rectal area had been deposited within an hour of death. The record also indicates that the victim had a non-fatal bullet wound to the back and two bullet wounds to the head, either of which could have resulted in death in a matter of several minutes.

(BE 2321:18–25, 2322: 1–20, 2323: 1–12). There was no way of telling which of the bullet wounds was first or last. (BE 2322: 14–17).

11. Given my decision to stay this action as to the matter of petitioner's sentence for the murder of victim McGarry, I need not decide this issue as to that murder at this time.

struction of the challenged provision. *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The "unconstitutional-as-applied" analysis requires a determination as to whether the evidence in the petitioner's case is sufficient to bring the particular murder within the bounds of factor (1)(d) as constitutionally construed. See, *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

Petitioner alleges that (1)(d) was unconstitutional as applied to the murder of Catherine Brooks because a sexual assault, standing alone, cannot be the basis for a finding of the existence of that circumstance. As noted above, at the time the Williams case was on appeal, the "especially heinous" prong of (1)(d) was viewed as including "murders involving torture, sadism, sexual abuse, or the imposition of extreme suffering." *State v. Rust, supra*, at 538–39, 250 N.W.2d 867. The sexual assault of Brooks appears to constitute sufficient evidence to bring that particular murder within the bounds of (1)(d). I cannot conclude that this prong of circumstance (1)(d) was unconstitutionally applied to petitioner's case.

In summary, I find that the application of aggravating circumstance (1)(d) to the petitioner's sentence for the murder of Patricia McGarry was based exclusively on the constitutionally infirm second prong of that factor. For that reason I will order that this case be stayed pending a decision by the Eighth Circuit Court of Appeals in *Moore v. Grammer*, CV84–L–754. As noted above, this court held in *Moore*, as it did in *Holtan*, that the second prong of (1)(d) is unconstitutionally vague. If the Eighth Circuit affirms this court's ruling in *Moore*, habeas relief would be warranted in this case as to the sentence imposed upon the petitioner for the murder of Patricia McGarry unless there would be some reason to distinguish this case from the *Moore* case.

## DEATH QUALIFIED JURY

In claim 4 petitioner alleges that his constitutional rights to a fair trial and due process of law were violated by the process of death qualifying the jury which convicted him. Specifically petitioner alleges that death qualified juries are "conviction prone" and that in Nebraska, where the jury is not responsible for sentencing, death qualification should not be permitted. Petitioner's brief cites no case law to support his proposition and points to nothing specific in the record which might tend to show that his jury was anything but impartial.

In *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) the Supreme Court held that death qualification does not violate the fair-cross-section requirement of the Sixth Amendment, and, furthermore, that the process does not violate the constitutional right to an impartial jury. The petitioner has advanced no argument nor case law which might tend to support a conclusion contrary to *Lockhart*. Therefore, I conclude that this claim is without merit.

## CONVICTION BASED ON ILLEGALLY OBTAINED CONFESSION

Petitioner alleges that his conviction was based in part on a confession which was obtained from him illegally in that he was never advised of his *Miranda* rights before being questioned by police, and that he requested an attorney but was not allowed to contact one. From the outset I note that the boundaries of this claim are disturbingly vague given the nature of this case. It is not at all clear whether the petitioner is challenging the voluntariness of his confession or if he is merely alleging that authorities did not read him the *Miranda* warnings prior to questioning and denied him the right to consult an attorney after he requested one. In petitioner's original pro se petition he alleges only that he was not advised of his *Miranda* rights prior to his confession. In the amended petition, subsequent to appointment of counsel, the only allegation states that petitioner requested the presence of counsel, that such request was denied by the police and that questioning then continued. Finally, the brief submitted on behalf of the petitioner states; "[i]n essence, this allegation centers on Petitioner's contention that he was not advised of his 'Miranda warnings' before he was questioned by members of the Lincoln Police Department." (Petitioner's brief at 11). Despite the findings of the state

courts to the contrary, the petitioner "asks that this court determine that the statement was taken from the Petitioner without the benefit of his Miranda warnings." (Petitioner's brief at 13).

■ Assuming for the sake of argument that petitioner has raised a question regarding the voluntariness of his confession, under *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), this court is not bound by the state court's determination, but is instead required to make its own independent determination of the voluntariness of the petitioner's confession. However, in *Miller* the Court also made clear that "subsidiary factual questions, such as . . . whether in fact the police engaged in the intimidation tactics alleged by the defendant, (citation omitted) are entitled to the § 2254(d) presumption [of correctness]." *Id.* at 112, 106 S.Ct. at 450–51. Therefore, as to subsidiary factual questions of whether the police in fact informed the petitioner of his *Miranda* rights and whether the petitioner in fact requested consultation with counsel which was denied by the police, this court is required to accord state court findings of fact a "high measure of deference." *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Graham v. Solem*, 728 F.2d 1533 (1984). Under 28 U.S.C. § 2254(d), the state court findings of fact are presumed correct unless this court concludes that those findings are not fairly supported by the record. *Graham, supra* at 1540–41. In addition, credibility determinations are left to the state courts and the federal court must accept those determinations. *Id., citing, Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). These rules of law apply to findings of fact made by either the trial court or the state appellate court. *Graham, supra* at 1541.

As to whether petitioner was informed of his *Miranda* rights, the trial court, following a suppression hearing, made the following finding of fact:

The Court will find that the state has met its burden of proof that the Miranda Warnings were given by Officer Ideen in

the presence—to the defendant—in the presence of Officer LaPage. I'll make that finding. I appreciate counsel's argument that why wasn't it put on the tape? Of course, the answer is that if they were given, it doesn't have to be put on the tape, and we have the testimony of these two officers that they were given as against the testimony of the defendant that they were not given.

(BE 482:5–13). (*See also*, BE 601: 19–21).

From the record it appears that neither the trial court nor the Nebraska Supreme Court made an explicit finding of fact regarding the question of whether the petitioner actually requested counsel prior to questioning. However, implicit in the trial court's finding that the petitioner was informed of his Miranda rights is a determination that the court accepted the testimony of Detective Ideen and Chief LaPage as true. That testimony indicates that the petitioner waived his right to the services of an attorney at the time of questioning as illustrated in the following testimony of Detective Ideen regarding his conversation with the petitioner prior to the questioning which elicited the confession:

"You have the right to talk to a lawyer and have him present with you during the questioning; do you understand that?" An affirmative answer.

"If you cannot afford a lawyer, you have the right to have a lawyer appointed for you prior to questioning; do you understand that?" Once again it was affirmative.

"Do you willingly do without the services of a lawyer at this time?" Affirmative answer again.

"Knowing your rights in this matter, are you willing to make a statement to us at this time?" The answer was also affirmative on this.

(BE 353:25, 354: 1–11). In accordance with *Graham v. Solem, supra,* not only must this court accept the credibility determinations of the state courts, "[f]ederal courts . . . [cannot] draw inferences which are adverse to, or conflicting with, the state court's factual determinations." *Graham,* 728 F.2d at 1541

(8th Cir.1984). Therefore, given that the state court finding of fact as to the giving of the Miranda rights is fairly supported by the record, this court must infer from the trial court's denial of the motion to suppress—in which this claim was raised—that the trial court found that petitioner did not request counsel and indeed waived his right to have counsel present.

■ In accordance with the dictates of *Miller*, this court must conduct an independent review of the merits of petitioner's claim that his confession was involuntary. "Although at trial the prosecution must establish that a challenged confession was voluntary, *see Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972), on collateral review, the burden of proving involuntariness rests with the habeas petitioner, *see Martin v. Wainwright*, 770 F.2d 918, 925 (11th Cir.1985), *cert denied*, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986)." *Sumpter v. Nix*, 863 F.2d 563 at 565 (8th Cir.1988). I have reviewed the record in this case, and conclude that the petitioner has wholly failed to demonstrate that, under the "totality of the circumstances," *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Sumpter v. Nix, supra*, the statements he made to the Lincoln police were anything other than voluntary. The petitioner has pointed to nothing in the record and has presented no facts that would tend to indicate that he was coerced or his will overborne. For example, there is no evidence that the mental or physical condition of the petitioner at the time was such as to render him irrational. In fact, Officers Wagner and Olsen, the arresting officers, testified that the petitioner was responding in a normal, coherent, and rational manner. (BE 290: 12–25, 291: 1–3, 329: 4–9). Detective Ideen's testimony was to the same effect. (BE 358: 8–15). There is no contention that petitioner was deprived of food or sleep nor is there any such evidence revealed by the record. There is no contention by petitioner that he was hounded by relentless questioning. The evidence shows that the officers made no promises or threats to the petitioner to induce him to make a statement. (BE 212: 9–15; 328: 15–23, 358: 16–25, 359: 1–3). Finally, there is no claim by the petition-er that he was unaware of the charges he was facing in this case. Although disputed by the petitioner, the findings of fact of the trial court and the Nebraska Supreme Court, which are binding on this court in this habeas action, indicate that he was advised of his rights by Detective Ideen before questioning began; from that finding of fact it can be inferred in the absence of contrary evidence that he voluntarily waived those rights.

I note that in his amended petition the petitioner has requested an evidentiary hearing on the question of whether he in fact made such a request for counsel. A federal district court must hold an evidentiary hearing on the allegations contained in a habeas petition if:

(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Warden v. Wyrick*, 770 F.2d 112 (8th Cir. 1985); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ The petitioner's request makes absolutely no mention of the above stated grounds for an evidentiary hearing. He sets forth no reasons why the hearing is required or what evidence would be presented at such hearing. In order to be entitled to a hearing the petitioner must allege facts which, if proved true, would demonstrate the inadequacy of the state court proceedings and entitle him to the relief he seeks. *See, e.g., Jensen v. Satran*, 651 F.2d 605, 608 (8th Cir.1981); *Lindner v. Wyrick*, 644 F.2d 724, 729 (8th Cir.), *cert. denied*, 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981). The petitioner has made no specific allegations contesting the state court proceedings, and the state court record provides all the informa-

tion necessary for a satisfactory determination of the issues raised. *See, e.g., Toler v. Wyrick,* 430 F.Supp. 545, 546 (E.D.Mo.1977). Therefore, petitioner's request for an evidentiary hearing will be denied.

## STATE'S VIOLATION OF DISCOVERY ORDER

In petitioner's final claim it is alleged that, following trial, the defense became aware of "exculpatory and/or mitigating" evidence contained in certain police reports which had been withheld prior to trial in violation of a trial court discovery order. Allegedly the police reports at issue were made known to the petitioner and his counsel following trial and prior to a hearing on his motion for a new trial. Petitioner alleges that these police reports contained evidence which would have been favorable to or aided in establishing his defense of insanity at trial. Petitioner's brief "summarizes" this evidence as follows:

1. Police interviews of several witnesses which reflected that the Petitioner had been using drugs and alcohol at or about the time of the murder.

2. Statements of witnesses including the Petitioner's spouse which reflected that the Petitioner had been acting mentally unstable around the time of the murders and that his personality had changed.

I note initially, once again, that the disputed police reports were not made a part of the state court records submitted to this court in this habeas action. In addition, the petitioner's brief is wholly devoid of any specifics relating to this claim, such as names of the "several witnesses" referred to, the disputed statements which were allegedly withheld, or how those statements would have aided in petitioner's defense.

In *Patterson v. Black,* 791 F.2d 107 (8th Cir.1986), the Eighth Circuit set forth the law relevant to this inquiry as follows:

> In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court stated that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. In *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), the Supreme Court reaffirmed the *Brady* holding and announced a three-part test for evaluation (sic) the constitutionality of prosecutorial actions in nondisclosure of information cases:
>
>> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.
>
> *Moore,* 408 U.S. at 794–95, 92 S.Ct. at 2567–68.
>
> \* \* \* \* \* \*
>
> The Supreme Court in *United States v. Bagley,* [473] U.S. [667], 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), reformulated the standard for materiality established in *United States v. Agurs,* 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976), with the following test:
>
>> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.
>
> *Bagley* [473 U.S. at 685], 105 S.Ct. at 3384; *id.* [473 U.S. at 685, 105 S.Ct.] at 3385 (White, J., concurring in part and concurring in judgment).

*Patterson,* 791 F.2d at 109–110. In addition, it appears as though those circuits which have addressed the issue agree that "determinations of materiality of evidence under *Brady* are mixed questions of law and fact and that the state court determinations are therefore not entitled to section 2254(d)'s presumption." *Carter v. Rafferty,* 826 F.2d 1299 (3rd Cir.1987); *see also, Patterson v. Black, supra,* 791 F.2d at 110.

In petitioner's case, however, the question of the materiality of the evidence at issue need not be reached. As noted by the Eighth Circuit in *Sargent v. Armontrout*, 841 F.2d 220, 226 (8th Cir.1988), "When seeking habeas relief, the burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden." Petitioner has submitted no evidence to this court supporting and has not sought to expand the record. His brief describes no specific evidence allegedly withheld, nor does it present any argument tending to show how it would have aided his defense. It is impossible for this court to determine whether this evidence was either favorable or material when such evidence is not made available to the court.

In summary, I conclude that the petitioner's claims, with the exception of his vagueness challenge to Neb.Rev.Stat. § 29–2523(1)(d), are without merit. In light of the pending appeal before the Eighth Circuit in *Moore v. Grammer*, CV84–L–754, it is appropriate to stay this action until the Court of Appeals resolves the issue of the constitutionality of § 29–2523(1)(d).

IT THEREFORE HEREBY IS ORDERED, this action is hereby stayed pending resolution by the Eighth Circuit Court of Appeals of the appeal in *Moore v. Grammer*, CV84–L–754.

Dated October 20, 1989.